16-1322-cr
*United States v. Browder*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2016

No. 16-1322-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

BRIAN S. BROWDER,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of New York

ARGUED: APRIL 27, 2017
DECIDED: AUGUST 8, 2017

Before: CABRANES, LOHIER, *Circuit Judges*, and FORREST, *District Judge.*[*]

———————

Defendant-appellant Brian S. Browder—having been convicted of possessing digital images and videos of child pornography, and having served the incarcerary portion of his sentence—appeals from an order finding him in violation of two conditions of his supervised release. The District Court (Lawrence J. Vilardo, *Judge*) found that Browder had violated two special conditions, one requiring that Browder's computer(s) be monitored by the United States Probation Office, and the other requiring that Browder attend a mental health treatment program for sex offenders. We conclude that Browder's challenge to the computer monitoring violation is unsuccessful, because the condition, as construed for purposes of this appeal and under our deferential review, is reasonable. But we conclude that Browder's challenge to the treatment violation has merit. Specifically, it was reasonable for Browder to object to signing a treatment agreement that conflicted with his actual sentence, and he does not appear, based on the record, to have otherwise acted unreasonably with respect to participating in such treatment. Accordingly, we **AFFIRM** the order in part, with respect to the violation of the computer monitoring condition; **REVERSE** the order in part, with respect to the violation of the treatment condition; and **REMAND** the

[*] Judge Katherine B. Forrest, of the United States District Court for the Southern District of New York, sitting by designation.

cause to the District Court for such further proceedings, consistent with this opinion, as may be appropriate.

---

RANDALL D. UNGER, Bayside, NY, *for Defendant-Appellant*.

MONICA J. RICHARDS, Assistant United States Attorney, for James P. Kennedy, United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee.*

---

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant Brian S. Browder—having been convicted of possessing digital images and videos of child pornography, and having served the incarcerary portion of his sentence—appeals from an order finding him in violation of two conditions of his supervised release. The District Court (Lawrence J. Vilardo, *Judge*) found that Browder had violated two special conditions, one requiring that Browder's computer(s) be monitored by the United States Probation Office, and the other requiring that Browder attend a mental health treatment program for sex offenders.

Browder objected to the Probation Office's implementation of both conditions. With respect to the computer monitoring violation,

Browder believed, and contends on appeal, that the Probation Office's computer monitoring policy was overreaching. With respect to the treatment violation, Browder refused to sign the relevant treatment agreement because the treatment agreement purported to bar Browder from contacting his own children *unless* approved by the Probation Office and the treatment providers—a requirement that conflicted with an express condition of supervised release ordered earlier by the District Court.

We conclude that Browder's challenge to the computer monitoring violation is unsuccessful, because the condition, as construed for purposes of this appeal and under our deferential review, is reasonable. But we conclude that Browder's challenge to the treatment violation has merit. Specifically, it was reasonable for Browder to object to signing a treatment agreement that conflicted with his actual sentence, and he does not appear, based on the record, to have otherwise acted unreasonably with respect to participating in such treatment. Accordingly, we **AFFIRM** the order in part, with respect to the violation of the computer monitoring condition; **REVERSE** the order in part, with respect to the violation of the treatment condition; and **REMAND** the cause to the District Court for such further proceedings, consistent with this opinion, as may be appropriate.

## I. BACKGROUND

On October 20, 2010, Browder pleaded guilty, pursuant to an agreement, to one count of possessing child pornography in violation

of 18 U.S.C. § 2252A(a)(5)(b). The factual basis of Browder's plea agreement provided as follows:

> On or about October 14,[] 2009, in the Western District of New York, the defendant possessed 462 images of child pornography in a Generic Computer in a black Antec tower. The defendant received and traded these images of child pornography over the internet using the file sharing programs eMule and eDonkey2000.
>
> Some of the child pornography possessed by the defendant depicted prepubescent children younger than 12 years of age.[1]

The affidavit accompanying the criminal complaint against Browder attested to, among other things, the following facts:

> Forensic analysis also discovered that the defendant had file wiping software and had used an encrypting file system. Also, the user account for the defendant was password protected. The password reminder for the account is "unouwill" and the password is "jerk4awhile," which was recovered during forensic analysis.[2]

---

[1] Plea Agreement at 4, *United States v. Browder*, 1:10-cr-00263-LJV (W.D.N.Y. Oct. 20, 2010), ECF No. 14.

[2] Complaint at 6, *United States v. Browder*, 1:10-cr-00263-LJV (W.D.N.Y. Mar. 22, 2010), ECF No. 1.

Judge Richard J. Arcara, to whom the case was originally assigned, sentenced Browder to six-and-a-half years' imprisonment followed by ten years' supervised release. The terms of Browder's supervised release included certain special conditions, three of which are relevant here. The first of these special conditions required Browder to participate in the Probation Office's Computer/Internet Monitoring Program.[3] The second relevant condition required Browder to participate in a mental health program for sexual offenders.[4] And the third condition barred Browder from having

---

[3] The condition provides in relevant part:

The defendant shall participate in the Computer/Internet Monitoring Program administered by the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that he will use during the term of supervision. Such computer or computers will be subject to monitoring by the U.S. Probation Office, consistent with the computer monitoring policy then in effect by the probation office. In accordance with the Second Circuit's decision, United States v. Lifshitz, 269 F.3d 173 (2d Cir. 2004), at footnote 11, and in light of the changing technology of computer monitoring techniques, the Court finds it prudent to delay the determination of the specific terms of the condition and computer monitoring policy until the defendant's supervised release commences.

Judgment at 4, *United States v. Browder*, 1:10-cr-00263-LJV (W.D.N.Y. May 31, 2011), ECF No. 43 ("2011 Judgment").

[4] The condition provides in relevant part:

The defendant is to enroll, attend, and participate in mental health intervention specifically designed for the treatment of sexual offenders as approved by the U.S. Probation Office. The defendant

6

deliberate contact with minors—excluding his children—unless approved by the Probation Office.[5]

On December 24, 2015, Browder finished his term of imprisonment and his term of supervised release began. In the time leading up to and shortly after his release, Browder met with his Probation Officer ("USPO"), Ann Marie Bucholtz, to review the conditions of his supervised release.[6] At the second meeting, Browder indicated he wished to use a computer, and USPO Bucholtz arranged for him to bring a laptop to her office so that monitoring software could be installed on it.

On March 2, 2016, Browder appeared at USPO Bucholtz's office with a laptop and was presented with a "Computer Monitoring Program Participant Agreement."[7] That agreement's first paragraph

---

is to comply with the mandates of the treatment program and is not to leave such treatment until discharge is agreed to by the U.S. Probation Office and treating agency.

*Id.*

[5] The condition provides in relevant part: "The defendant shall not have deliberate contact with any child under 18 years of age, excluding his biological or adopted children, unless approved by the probation officer." *Id.*

Browder has two daughters.

[6] At the revocation hearing, USPO Bucholtz testified that she supervises all sex offenders.

[7] *See* Appendix ("A.") 122–23. Browder had previously signed this agreement, but since he did not then have a computer, he and USPO Bucholtz

7

provides in relevant part that, "I understand that this agreement is, by reference, part of the order setting conditions of supervision and that failure to comply with its provisions or the instructions of my officer will be considered a violation of my supervision and may result in adverse action."[8] Paragraph six of that agreement provides in relevant part:

> I agree to allow the U.S. Probation Office to install software/hardware designed to monitor computer activities on any computer(s)/connected device(s) I own or have access to. I understand that the monitoring device may record any and all activity on my computer, including the capture of keystrokes, application information, internet use history, email correspondence, and chat conversations.[9]

Evidently this monitoring would be performed by a third-party private company, Remote.com.[10]

---

circled only the three paragraphs that applied to him at that time—none of which he objects to here.

[8] A. 122 ¶ 1.

[9] *Id.* ¶ 6.

[10] At the violation hearing, USPO Bucholtz testified that Remote.com is staffed by former law enforcement officials, and that they will alert the Probation Office only if those monitored are "looking at any contraband." *Id.* at 71. It is unclear what constraints, if any at all, are imposed on Remote.com's monitoring of probationers.

Browder objected to this computer monitoring agreement as overbroad and overreaching, expressing concerns in particular about the monitoring of computer files related to his *pro se* motion under 28 U.S.C. § 2255, which Browder was working on at that time. He also refused to allow USPO Bucholtz to keep the laptop or say what he would do with it. The Probation Office then conducted a search of Browder's home; no computer was found, but flash drives and SD (storage device) cards were. Browder refused to disclose the whereabouts of the laptop.

During the same general time period, Browder appeared for at least two sexual offender treatment appointments at Mid-Erie Counseling and Treatment Services. His treatment was terminated, however, because he objected to the treatment agreement's inclusion of a term that conflicted with his special conditions.[11] That term provided that Browder would "lead a prosocial lifestyle and refrain from any and all willful contact, visitation, letter writing and telephone calls with *anyone* under the age of 17 years old"—without exception—"unless approved by my parole or probation officer and the treatment team before I have contact with them."[12] In a letter dated March 16, 2016—and which was delivered to USPO Bucholtz

---

[11] *See id.* at 52–53, 126; *see also id.* at 124 (March 16, 2016 letter from Browder to USPO Bucholtz).

[12] *Id.* at 133 (emphasis added).

no later than March 23, 2016—Browder documented his objection, writing as follows, in part,[13] to USPO Bucholtz:

> As you are aware, I have objections to Mid-Erie's "treatment agreement form" that compel me not to sign. I want to be clear that I have not refused counseling; they refused to modify or allow modification of an over-reaching agreement, so I could not sign, so they refused me counseling. . . . [T]he Restriction grants you authority to deny me any contact with my own children, even by birthday card. The court did not convey that authority to you . . . . I will not be compelled to grant that authority. That was largely why I could not sign . . . .[14]

On March 25, 2016, the Probation Office filed a violation petition alleging violations of the sex offender treatment and computer monitoring conditions. By that time, the case had been transferred from Judge Arcara to Judge Vilardo.[15] On March 29, 2016, Judge Vilardo granted the Government's motion to detain Browder. On April 4, 2016, a violation hearing was held, with testimony from USPO Bucholtz. At the hearing's conclusion, the District Court found that the two violations were proven by a preponderance of the

---

[13] We need not consider the alternative objections that Browder raised in his letter. We simply note that a supervisee's subjective belief in his own innocence—despite having been convicted, upon a guilty plea or otherwise—is not a valid reason for that supervisee to disregard the mandatory, court-ordered conditions of his supervised release.

[14] A. 124.

[15] The case was reassigned on December 4, 2015.

evidence. At sentencing, the District Court imposed a sentence of "time served" and reinstated the same terms (duration and conditions) of supervised release as were already in effect.

This appeal followed.

## II. DISCUSSION

Among Browder's arguments on appeal,[16] the more substantial relate to the legal validity of the two special conditions themselves— or, perhaps more precisely, the validity of the Probation Office's

---

[16] To the extent Browder challenges the sufficiency of the evidence supporting his violations, we easily conclude that such a challenge fails.

"A district court's finding that a defendant has violated conditions of supervised release is reviewed for abuse of discretion, and its factual findings are reviewed for clear error." *United States v. Glenn*, 744 F.3d 845, 847 (2d Cir. 2014) (citations omitted). A district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). In challenging a violation on sufficiency grounds, a supervisee "assumes a 'heavy burden,' because a district court need only be 'reasonably satisfied' that a probationer has failed to comply with the conditions of probation to revoke sentence." *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (quoting *United States v. Lettieri*, 910 F.2d 1067, 1068 (2d Cir. 1990)).

Here, the District Court did not err in finding that there was sufficient evidence supporting a finding of a violation of the special conditions. A. 85–86. Contrary to the requirements of his special conditions, Browder refused to "participate in the Computer/Internet Monitoring Program," and he also refused to "comply with the mandates of the treatment program." 2011 Judgment at 4. Accordingly, Browder's sufficiency challenge is without merit.

implementation of those conditions. We address his arguments with respect to each condition in turn.

## A. Violation of the Computer Monitoring Condition

To begin, we note that, as written, it is not clear what degree of computer monitoring the District Court imposed in this special condition. The condition, originally imposed by Judge Arcara in 2011, provides in relevant part:

> The defendant shall participate in the Computer/Internet Monitoring Program administered by the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that he will use during the term of supervision. Such computer or computers will be subject to monitoring by the U.S. Probation Office, consistent with the computer monitoring policy then in effect by the probation office. In accordance with the Second Circuit's decision, United States v. Lifshitz, 269 F.3d 173 (2d Cir. 2004), at footnote 11, and in light of the changing technology of computer monitoring techniques, *the Court finds it prudent to delay the determination of the specific terms of the condition and computer monitoring policy until the defendant's supervised release commences*.[17]

Once Browder's supervised release began in December 2015, however, there was no "determination of the specific terms of the

---

[17] 2011 Judgment at 4 (emphasis added).

12

condition." (Earlier that month, the case had been transferred from Judge Arcara to Judge Vilardo.) Nevertheless, all the relevant parties in this case appear to have been operating on the understanding—reasonably, perhaps, given some of the language in the special condition—that, upon his release, Browder was subject to whatever computer monitoring policy the Probation Office of the Western District of New York had in effect at that time. Indeed, in this appeal, Browder seems to be challenging the policy of the Probation Office, not the sentence of the District Court.

Browder's principal contention on appeal is, "[i]n short," that "the computer monitoring system that the Probation Office sought to implement involved a 'greater deprivation of liberty than is reasonably necessary for the purposes set forth in section[s] 3553(a)(2)(b), (a)(2)(C), and (a)(2)(D) [of Title 18 of the United States Code].'"[18] Browder's principal argument—which seeks to apply the requirements governing the *imposition* of sentence by the District Court to the *execution* of that sentence by the Probation Office—is thus fundamentally confused. "[T]he extensive 'supervision mission' of federal probation officers includes 'execut[ing] the sentence,' but not imposing it."[19] And while the special condition that Judge Vilardo originally imposed (unless and until updated and made more specific) may be subject to challenge as an impermissible

---

[18] Appellant's Br. 13–14 (quoting 18 U.S.C. § 3583(d)(2)).

[19] *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) (quoting *United States v. Reyes*, 283 F.3d 446, 456 (2d Cir. 2002)).

13

delegation of judicial authority to the Probation Office,[20] Browder does not bring any such challenge here. Any delegation argument has therefore been waived in this appeal.

In light of the foregoing, we construe the computer monitoring condition as Browder himself does—that is, as having sentenced him to whatever computer monitoring policy was used by the Western District's Probation Office at his release—and consider whether that sentence, as effectuated in the Probation Office policy, was unreasonable or an "abuse of discretion."[21] We conclude it was not.

---

[20] We have explained that "[t]he power to impose special conditions of supervised release . . . is vested exclusively in the district court." *Matta*, 777 F.3d at 122. While "a district court may delegate to a probation officer decisionmaking authority over certain minor details of supervised release—for example, the selection of a therapy provider or treatment schedule"—it "may not delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *Id.*; *see also* U.S.S.G. § 5D1.3(b) ("*The court* may impose other conditions of supervised release . . . ." (emphasis added)); *cf. United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (holding that two special conditions—delegating to the probation officer the decision whether to require sex offender counseling and the decision whether to require third-party notifications—were impermissible delegations of judicial authority).

[21] *See Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Rigas*, 583 F.3d 108, 114 (2d Cir. 2009) ("[T]he role of the Court of Appeals is limited to examining a sentence for reasonableness, which is akin to review under an 'abuse-of-discretion' standard."); *United States v. Brown*, 402 F.3d 133, 136 (2d Cir. 2005) ("We review the propriety of a supervised release condition for abuse of discretion."). "[S]upervised release, [a] form of post-imprisonment supervision . . . is imposed by a federal district court as *part of a total sentence in addition to* a period of incarceration at the time of the initial sentencing of a convicted federal criminal

Under 18 U.S.C. § 3583(d), the imposition of certain conditions of supervised release is mandatory, but "[d]istrict courts also have discretion to impose other, non-mandatory conditions of supervised release,"[22] which are commonly referred to as "special conditions." Such discretion is not unbounded, however.[23] The United States Sentencing Guidelines provide that a district court

> may impose other conditions of supervised release to the extent that such conditions (1) are *reasonably related* to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is *reasonably necessary* for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.[24]

---

defendant." *United States v. Reyes*, 283 F.3d 446, 456 (2d Cir. 2002) (emphasis in original) (internal quotation marks omitted).

[22] *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010).

[23] *Id.*

[24] U.S.S.G. § 5D1.3(b) (emphases added). Substantially the same requirements are set forth, by means of intricate cross-referencing, in 18 U.S.C. § 3583(d). *See United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013).

With respect to the first, "reasonably related" requirement, "a condition may be imposed if it is reasonably related to any one or more of the specified factors."[25] The second, "reasonably necessary" requirement has a constitutional gloss in the computer-monitoring context.[26]

In *United States v. Lifshitz*,[27] we considered a probationer's Fourth Amendment challenge to a broadly worded computer monitoring condition.[28] We explained that the special needs of

---

[25] *United States v. Abrar*, 58 F.3d 43, 46 (2d Cir. 1995); *accord United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013).

[26] We focus here on the Fourth Amendment. In *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), however, the Supreme Court struck down, as a violation of the First Amendment, a North Carolina law that barred sex offenders from having access to social media (and other) internet sites. We need not dwell on the implications of *Packingham* here. For one thing, *Packingham* is not directly on point. It involved an internet *ban*—not internet or computer *monitoring*—and that ban extended beyond the completion of a sentence. *See id.* at 1737 (noting, but seeming not to rely on, "the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system"); *cf. United States v. Lifshitz*, 369 F.3d 173, 181 n.4 (2d Cir. 2004) ("Supervised release, parole, and probation lie on a continuum. The most severe is 'supervised release,' which is 'meted out in addition to, not in lieu of, incarceration.'" (quoting *Reyes*, 283 F.3d at 461)). Additionally, and most significantly, Browder raises no First Amendment challenge and thus waived the argument on appeal.

[27] 369 F.3d 173 (2d Cir. 2004).

[28] The relevant sentence in Lifshitz's condition provided: "The defendant shall consent to the installation of systems that enable the probation officer or designee to monitor and filter computer use, on a regular or random basis, on any computer owned or controlled by the defendant." *Id.* at 178 n.3.

supervision permit the monitoring of a supervisee's computer use, but that a "monitoring condition must be narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into its net."[29] When irrelevant data *is* "inadvertently gathered . . . , those monitoring compliance should remain conscientiously unaware of that data."[30] In other words, while a computer monitoring condition "must bear 'a close and substantial relation' to the government's interest in pursuing the search," it need not employ "'the least intrusive means.'"[31] We did not hold that the condition in *Lifshitz* violated the Fourth Amendment, but we said the condition "may . . . be overbroad" and remanded so the district court could "evaluate the privacy implications of the proposed computer monitoring techniques as well as their efficacy as compared with computer filtering."[32] We also suggested that where there may be a

---

[29] *Id.* at 190.

[30] *Id.*

[31] *Id.* at 192 (citation omitted) (quoting, respectively, *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 676 (1989) (drug tests of customs officials), and *Bd. of Educ. v. Earls*, 536 U.S. 822, 837 (2002) (drug tests of schoolchildren)).

[32] *Id.* at 193. In *Lifshitz*, we did not have occasion to again evaluate the condition following our remand, but it appears that the following condition was in effect as of 2011:

> The defendant is not to use a computer, Internet-capable device, or similar electronic device to access child pornography or to communicate with any individual or group for the purpose of promoting sexual relations with children. The defendant shall consent to the use and/or installation of a computer program which shall monitor suspect computer use on computer[s] owned or

17

significant delay before the monitoring condition comes into effect—for example, in the case of supervised release—"it might well be prudent for the district court to postpone the determination of the supervised release or probation conditions until an appropriate later time, when the district court's decision could be based on then-existing technological and other considerations."[33]

---

controlled by the defendant. The program(s) used will be designed to identify, for the probation office, only the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual nature, defined as Suspect Computer Use. Suspect Computer Use shall be identified by the installed program(s) and/or the probation officer through the screening of the defendant's computer usage for certain key words, phrases and images.

Judgment at 4, *United States v. Lifshitz*, 1:03-cr-00572-LAP (S.D.N.Y. May 18, 2011), ECF No. 32.

[33] *Lifshitz*, 369 F.3d at 193 n.11. The history of this case indicates that our well-meaning suggestion may at times fare better in theory than in fact. At a minimum, rather than delaying imposition of sentence, it may be more practical for a district court to impose the full sentence (including, that is, the specific terms of any computer monitoring or filtering condition) in the first instance. If less invasive means of computer supervision arise, through technological or other innovation, the defendant or the government is free to seek modification of the condition. *See* 18 U.S.C. § 3583(e)(2) (providing a court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision"); Fed. R. Crim. P. 32.1(c) (concerning modification); *see also, e.g.*, *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016) (applying 18 U.S.C. § 3583(e)(2)). It may be that the monitoring condition initially imposed proves to be nothing but a temporary placeholder—but, as this case illustrates, it may not.

Viewing the computer monitoring to which Browder is subject in light of the foregoing standards, we conclude it is reasonable. Browder was convicted of possessing over 462 digital images of child pornography that he received (and shared) on internet exchanges, so computer monitoring is "reasonably related" to the nature and circumstances of the offense and Browder's history and characteristics. The monitoring is also "reasonably necessary" for the broad sentencing purposes indicated in U.S.S.G. § 5D1.3(b) and 18 U.S.C. § 3553(a)(2), including specific deterrence, public protection, and rehabilitation. Notably, there was evidence that Browder had employed computer software that could conceal or erase illicit images. And importantly, USPO Bucholtz testified—and the District Court found—that the third-party monitoring organization, Remote.com, notifies the Probation Office only if it detects "contraband," and would not convey any information related to Browder's § 2255 motion. So long as the principal concern is monitoring by the Probation Office—which, in fact, *is* Browder's principal stated concern[34]—this third-party monitoring arrangement helps ensure that the monitoring remains, in the words of *Lifshitz*, "narrowly tailored."[35] Put differently, the monitoring at issue in this particular case is not an unreasonable or excessive deprivation of liberty.

---

[34] Although a defendant might hypothetically raise an objection to the use of a third-party monitoring service, Browder has not done so here.

[35] 369 F.3d at 190.

19

Accordingly, we conclude that subjecting Browder to the computer monitoring conditions described above was not an abuse of discretion. But to say that a sentence is within the range of reasonable sentences is not, of course, to say that it is the only reasonable sentence. As already explained, while Browder has waived any delegation challenge in this appeal, it is not clear that the *District Court* ever imposed on Browder the specific terms of monitoring reflected in the Probation Office's policy. Because we remand as to Browder 's mental health treatment condition in any event, we direct the District Court to review the computer monitoring condition of supervised release and to re-state the terms of *Browder's* computer monitoring condition with greater specificity.[36]

## B. Violation of the Mental Health Treatment Condition

Our analysis with respect to the District Court's finding that Browder violated the mental health treatment condition is more straightforward. The gravamen of Browder's complaint is simply

---

[36] For instance, the condition in *Lifshitz*, as revised following remand, itself contained certain narrowing provisions (whereas, here, we have construed the computer monitoring condition as it has been implemented, not as it is written). *See* note 32, *ante*. We also note there may be conflicting opinions in the record regarding the feasibility of Browder using a word processer that is not capable of gaining access to the internet. *Compare* A. 72–73 (USPO Bucholtz disputing the availability or feasibility of an internet-disabled word processor), *with id.* at 110 (the District Court stating at sentencing on the alleged violations of supervised release: "In fact, unlike those who have to undergo drug testing, you have a way to avoid the possibility of intrusion altogether. You can draft your papers on a device that's not capable of accessing the internet.").

that the proposed treatment agreement conflicted with his actual sentence.[37] In particular, the original sentence of the District Court included a specific condition prohibiting contact with minors, but it categorically excluded Browder's children from that prohibition. By contrast, the proposed treatment agreement's provision regarding contact with minors did *not* categorically exclude Browder's children.

We agree with Browder that the treatment agreement would have subjected him to a more punitive condition governing contact with minors than did the condition to which Browder was actually sentenced by the District Court.[38] Browder was therefore well within his rights to object to that term of the agreement. Nor do we find that Browder otherwise acted unreasonably with respect to the treatment special condition. Browder made what appears to be a good-faith effort to attend the treatment, appearing at (at least) two sessions. In addition, Browder communicated his objection to the treatment

---

[37] Browder likewise fails to raise a delegation challenge here. But whether or not the treatment condition is susceptible to a delegation challenge, *cf. Peterson*, 248 F.3d at 85; *United States v. Morin*, 832 F.3d 513, 516–17 (5th Cir. 2016), Browder's primary point, in our view, is that the treatment cannot be implemented in a way that directly conflicts with other, specific conditions of his supervised release.

[38] Notably, the treatment agreement even refers to its terms as "conditions." *See* A 132–33. Part of the agreement states: "I have read, understand and acknowledge that I am required to follow all of the conditions listed below regarding my treatment and behavior. These conditions have been explained to me in an understandable manner and I have been allowed to ask questions to clarify any parts of this agreement." *Id.* at 132. It then proceeds to enumerate fifteen "General Conditions." *Id.* at 132–33.

agreement in a written letter to USPO Bucholtz, and his objection was also documented in the treatment facility's records. Nevertheless, USPO Bucholtz was unable to testify that she had read any of those documents prior to seeking a violation of this condition. Finally, any delay in Browder's receiving the mental health treatment due to his objection—unlike, arguably, the risks posed by a sex offender's possession of an unmonitored computer—did not pose the sort of risk that might warrant arrest and imprisonment.

Accordingly, we conclude that the District Court's finding that Browder violated this condition of his release by objecting, reasonably, to the treatment agreement, on the ground that it conflicted with his actual sentence, was an "abuse of discretion"[39]— that is, an error.

We recognize, of course, that both the no-minors-contact special condition (imposed by the District Court as part of its sentence) and the no-minors-contact term (included in the treatment agreement of Mid-Erie, the Probation Office's chosen treatment provider) allowed for contacts with minors *if approved* by the Probation Office. The District Court appears to have placed significant weight on USPO Bucholtz's testimony that, if Browder had sought permission to contact his daughters, the Probation Office

---

[39] *See Glenn*, 744 F.3d at 847.

would have approved it; indeed, the District Court noted that, given Browder's sentence, the Office had no choice but to do so.[40]

Even if that were the case, however, approvals from the Probation Office are insufficient to remedy the issue raised by Browder. First, the treatment agreement actually required the approval not only of the Probation Office, but also of "the treatment team"[41]—something the District Court did not address and over which it had no direct oversight. Second, and more fundamentally, the District Court misapprehended the relationship between a defendant's sentence (by a judge) and its execution (by a probation officer). The key question is not whether permission, if sought, would be granted; it is whether Browder can be required, by the Probation Office or its designee, to ask in the first place. Because such a requirement as to Browder's children would contradict, rather than execute, Browder's sentence, the Probation Office was plainly without power to impose it, as Browder correctly argued.

---

[40] *See* A. 110–11 (the District Court stating at sentencing on the alleged violations of supervised release: "You must have known that you would have been given permission if you would have asked. In fact, the Court required that you be given permission. Judge Arcara required that. And Ms. Bucholtz testified that all it would have taken for you to have been given permission was a phone call and you would have gotten explicit permission."). Of course, the District Court did not address the fact that Browder *had* written and delivered a letter to USPO Bucholtz, *as well as* the fact that USPO Bucholtz could not say whether she sought to charge Browder with a violation before actually learning the grounds of his objection to the treatment agreement.

[41] *Id.* at 133.

# III. CONCLUSION

To summarize, we hold as follows.

(1) Browder's challenge to that part of the District Court's order finding that he had violated his computer monitoring condition is unsuccessful because the condition, as construed for purposes of this appeal and under our deferential review, is reasonable. Nevertheless, we direct the District Court to review this condition of supervised release and to re-state the terms of *Browder's* computer monitoring condition with greater specificity.

(2) Browder's challenge to that part of the District Court's order finding that he had violated his treatment condition is successful, because it was reasonable for Browder to object to signing a treatment agreement that conflicted with his actual sentence, and he does not appear to have otherwise acted unreasonably with respect to participating in such treatment.

For the foregoing reasons, we **AFFIRM** the District Court's order in part, with respect to the violation of the computer monitoring condition; **REVERSE** the order in part, with respect to the violation of the treatment condition; and **REMAND** the cause to the District Court for such further proceedings, consistent with this opinion, as may be appropriate.