*United States v. Rubel*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand twenty.

PRESENT:
>       DENNIS JACOBS,
>       SUSAN L. CARNEY,
>       MICHAEL H. PARK,
>               *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

>       *Appellee,*


>       v.                                                      No. 18-2725

BRIAN RUBEL,

>       *Defendant-Appellant.*

_____

FOR DEFENDANT-APPELLANT:            ALLEGRA GLASHAUSSER, Of Counsel,
                                    Federal Defenders of New York, Appeals
                                    Bureau, New York, NY.


FOR APPELLEE:                       MICHAEL D. MAIMIN (Daniel B. Tehrani,
                                    *on the brief*), Assistant United States
                                    Attorneys, *for* Audrey Strauss, Acting
                                    United States Attorney for the Southern
                                    District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's judgment entered on August 30, 2018, is **AFFIRMED**.

Brian Rubel appeals from an amended final judgment revoking, and sentencing him for violations of, his supervised release. In 2010, Rubel pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2), and was sentenced to 66 months of imprisonment to be followed, consistent with the U.S. Sentencing Guidelines ("USSG" or "Guidelines"), by a lifetime term of supervised release. The lengthy supervised release term was premised, the record suggests and the District Court explained, on the nature of the images and videos that he had collected and the need to deter Rubel from committing, and thus to protect the public from, future crimes—particularly given his "unwillingness" to confront what "makes him interested in [child pornography]," including the recalcitrance he displayed during treatment even before he was sentenced. App'x 41. Rubel was released from custody and began supervised release in August 2015.

Just over one year later, in September 2016, Rubel admitted to four violations of the conditions of his supervised release: (1) failing to participate in court-mandated sex offender treatment; (2) deliberately and repeatedly contacting a seven-year-old child without the permission of his United States Probation and Pretrial Services System ("Probation") officer; (3) loitering within 100 feet of a park used primarily by children under the age of 18; and (4) failing to give truthful answers to his Probation officer about his use of Facebook. The U.S. District Court for the Southern District of New York (Seibel, *J.*) sentenced him to a 12-month period of incarceration to be followed, again, by a lifetime term of supervised release—but on this iteration with a somewhat different set of special conditions. On appeal, Rubel argues that the term of his supervised release is both procedurally and substantively unreasonable; he also challenges certain of the special conditions imposed. We assume the

parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

    1.  <u>Lifetime Term of Supervised Release</u>

Rubel first contends that the imposition of a lifetime term of supervised release—the recommended sentence under the U.S. Sentencing Guidelines, *see* USSG § 5D1.2(b) (Policy Statement)—is both procedurally and substantively unreasonable.[1]

We apply "a particularly deferential form of abuse-of-discretion review" in the arena of sentencing. *United States v. Cavera*, 550 F.3d 180, 187-89 & n.5 (2d Cir. 2008); *see also United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005) ("[A] sentence for violation of supervised release is [reviewed under] the same standard as for sentencing generally: whether the sentence imposed is reasonable.").[2] Thus, we have explained that a sentence is procedurally unreasonable only if the district court: (1) "fails to calculate the Guidelines range"; (2) "makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory"; (3) "does not consider the [18 U.S.C.] § 3553(a) factors"; (4) "rests its sentence on a clearly erroneous finding of fact"; (5) "fails adequately to explain its chosen sentence"; or (6) deviates from the Guidelines range without explanation. *Cavera*, 550 F.3d at 190. A sentence is substantively unreasonable "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Id.* at 188-89 & n.5.

Because Rubel did not contest the procedural reasonableness of his sentence before the District Court, we review for plain error. *See United States v. Villafuerte*, 502 F.3d 204, 208 (2d Cir. 2007) ("[W]e now expressly hold that rigorous plain error analysis is appropriate for . . . unpreserved [assertions of procedural] errors."). To establish plain error, a defendant must demonstrate "(1) error, (2) that is plain, . . . (3) that affects substantial rights," and (4)

---

[1] The government urges at the outset that Rubel's challenge to the reasonableness of his supervised release term is not properly before us, both because the "mandate rule prevented [the District Court] . . . from reconsidering Rubel's lifetime term of supervised release," and because "Rubel waived any such challenge." Gov't Br. 26-27. Because we hold that Rubel's challenge to the reasonableness of his term of supervised release fails, we do not consider these procedural issues.

[2] Unless otherwise noted, this order omits all alterations, brackets, citations, and internal quotation marks in text quoted from case law.

that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997).

Rubel's primary contention is that the District Court "never adequately explained why a lifetime term of supervised release is warranted." Appellant's Br. 27-29. But the court provided ample reasons for the sentence it imposed, including that Rubel presents "a high risk of recidivism and danger to the community." App'x 141; *see also* App'x 71-73; *cf. United States v. Cassesse*, 685 F.3d 186, 191-93 (2d Cir. 2012) (rejecting, on plain error review, a challenge to a sentence based on a violation of supervised release violation sentence where court "provided a lengthy explanation" for sentence, even though the explanation "technically occurred during the discussion of a different (but closely related) crime"). We therefore have little difficulty concluding that the District Court did not commit procedural error—plain or otherwise—in sentencing Rubel.

Nor do we find the sentence imposed to be substantively unreasonable.[3] Indeed, as we noted, not only does a lifetime term of supervised release lie *within* the recommended Guidelines range for defendants like Rubel, the Guidelines *expressly suggest* that courts impose such a term in cases like this one, where the "offense of conviction is a sex offense." USSG § 5D1.2(b) (Policy Statement). Although we will not "presume that a Guidelines sentence is reasonable, we have recognized that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008). We have reasoned along these lines in affirming the imposition of lifetime terms of supervised release in cases involving misconduct that closely parallels Rubel's, such as simple possession or receipt of child pornography. *See, e.g.*, *United States v. Brown*, 360 F. App'x 189, 190-92 (2d Cir. 2010) (restating Congress's finding "that the high rate of recidivism of sex offenders does not decline with age" as support for the conclusion that a lifetime term of supervised release was substantively reasonable where the defendant had been convicted of

---

[3] We have not yet "decided whether plain error review applies to an unpreserved challenge to the substantive reasonableness of a sentence," *United States v. Thavaraja*, 740 F.3d 253, 258 n.4 (2d Cir. 2014), and we do not do so now because Rubel's substantive reasonableness challenge fails even under the less forgiving abuse-of-discretion standard.

possession of child pornography); *United States v. Raftopoulos*, 254 F. App'x 829, 830-31 (2d Cir. 2007) (finding "that the district court's imposition of lifetime supervised release was reasonable" where the defendant had been convicted of receiving child pornography and "[m]oreover," the record contained evidence of the defendant's "ideation" about unlawful sexual activities, including "fantasizing about having sex with [minors]"). Thus, given the nature of Rubel's crime; his violation of both the terms of his bail and, later, of the conditions of his supervised release; and the District Court's findings with respect to his personal characteristics, we cannot say that this component of Rubel's sentence is "shockingly high . . . or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). We therefore conclude that the District Court did not abuse its discretion in imposing a lifetime term of supervised release.[4]

2.  Conditions of Supervised Release

Next, Rubel challenges the District Court's imposition of four special conditions on his supervised release.[5] As we have often explained, sentencing "courts have broad discretion to tailor conditions of supervised release," and "may impose special conditions . . . that are reasonably related to certain statutory factors governing sentencing, [and] involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing." *United States v. Gill*, 523 F.3d 107, 108-09 (2d Cir. 2008) (per curiam). In deference to district courts' "wide latitude" in this arena, "we subject the conditions themselves to an abuse of discretion standard." *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). With these principles in mind, we consider each of the challenged conditions in turn.

---

[4] We note that Rubel may, in the future (and presumably after a period of time in which he has been in compliance with the applicable conditions), apply to the District Court to terminate his supervised release. *See* 18 U.S.C. § 3583(e)(1); *see also United States v. Sausville*, 559 F. App'x 107, 109 (2d Cir. 2014) (considering possibility of early termination in affirming reasonableness of a lifetime term of supervised release).

[5] The government insists that Rubel did not preserve his right to challenge any condition except the first of the four that he challenges on appeal—the Monitoring Condition—and contends accordingly that we should review the District Court's imposition of the latter three conditions "only for plain error." Appellee's Br. 51-52; *see also United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010) ("When the defendant does not object to the conditions . . . we review only for plain error."). Since we conclude that Rubel cannot prevail under either standard, we do not decide which properly applies.

5

A. *The Monitoring Condition*

First, Rubel contests Special Condition #5 (the "Monitoring Condition"), which allows Probation "to install any application or software that allows it to survey and/or monitor all activity on any computer(s), automated service(s), or connected devices that the defendant will use during the term of supervision and that can access the internet."[6] App'x 169. Characterizing the Monitoring Condition as authorizing "essentially unfettered" surveillance, Rubel asserts that it is not narrowly tailored and effects a greater deprivation of liberty than is reasonably necessary. Appellant's Br. 35.

In *United States v. Browder*, we held that a district court did not abuse its discretion when it imposes a condition that allowed monitoring of "any and all activity on [the defendant's] computer, including the capture of keystrokes, application information, internet use history, email correspondence, and chat conversations." 866 F.3d 504, 507 (2d Cir. 2017). There, we concluded that such computer monitoring was both "'reasonably related' to the nature and circumstances of the offense and [the defendant's] history and characteristics." *Id.* at 512. We further deemed it "'reasonably necessary' for . . . sentencing purposes . . . , including specific deterrence, public protection, and rehabilitation," because the defendant possessed "images of child pornography that he received (and shared) on internet exchanges" and had taken action to evade detection of this misconduct. *Id.*

Similar circumstances are present here: Not only has Rubel used Internet-enabled electronic devices to download images and video of child pornography (as well as "to meet strangers for sex" and "to send lewd pictures of himself and engage [in] cybersex"), he has also taken steps to circumvent monitoring. Most concerning, he has declared that he sees "nothing wrong with a 12 or 13-year-old having sex with an older person" and has resisted

---

[6] In a sealed submission, the government described the capabilities of the specific monitoring software that Probation currently uses. Those details—the release of which the government worried would enable supervisees to evade monitoring—are not relevant for our purposes; instead, it is sufficient now to note that the government does not dispute Rubel's contention that the software "allows probation to monitor and everything he does on his phone, computer or any other electronic device." Appellant's Br. 31.

treatment designed to help him accept the illegality of such sexual relationships, among other things. App'x 70, 144-45.[7]

With respect to the question of tailoring the condition to suit the offender, although we expect monitoring to "be precisely targeted to" and to "bear a close and substantial relation to the government's interest in pursuing the search" of information on the offender's electronic devices, we do not require employment of "the least intrusive means." *United States v. Lifshitz*, 369 F.3d 173, 190-92 (2d Cir. 2004). Instead, we require that, "if other information is inadvertently gathered . . . , those monitoring compliance should remain conscientiously unaware of that data." *Id.* at 190.

In light of these guiding principles, we cannot conclude that the District Court exceeded the permissible bounds of its discretion in imposing the Monitoring Condition—particularly where Rubel did not propose any narrower alternatives in that court.

Accordingly, because Rubel has repeatedly used the Internet to engage in unlawful conduct and in conduct that violates the terms of his supervised release, has concealed some of his efforts to do so, and has given no indication that he currently believes or could be persuaded that this conduct is problematic, we decline to vacate the Monitoring Condition.[8]

---

[7] Rubel's attempt to distinguish *Browder* is without merit. In that case, as mentioned, we approved a similarly broad monitoring condition. Unlike in Rubel's case, however, Browder's computer activity was to be monitored by a party other than Probation. *See* 866 F.3d at 512. We explained that "this third-party monitoring arrangement help[ed] ensure that the monitoring remain[ed] . . . narrowly tailored." *Id.* Critically, however, Browder's objection to the computer monitoring condition as "overbroad and overreaching" was animated by his "concerns in particular about the monitoring of computer files related to his *pro se* motion under 28 U.S.C. § 2255, which [he] was working on at that time." *Id.* at 507. We concluded that those concerns were misplaced because the third party would "notif[y] the Probation Office only if it detect[ed] 'contraband,' and would not convey any information related to Browder's § 2255 motion." *Id.* at 512. In other words, we held in Browder's case that the third-party arrangement ensured that the monitoring condition was narrowly tailored to the specific end of preventing *Probation* from receiving information about Browder's § 2255 motion; we did *not* hold that such a filtering arrangement was necessary for similar conditions to be treated as "narrowly tailored." Indeed, if anything, *Browder* highlights the fact that, for monitoring to be effective, *some* entity—whether Probation or a third party—must be able to monitor a large swath of the defendant's Internet activity. *Cf. United States v. Balon*, 384 F.3d 38, 47-48 (2d Cir. 2004) (observing "that unless the probation officer is allowed to search" all of a convicted defendant's computer files, even documents that seem "innocuous" because of a file name, "a user could store huge amounts of illicit data on the computer without anyone being allowed to view it").

[8] We note that, in *United States v. Ewart*, a case that closely parallels Rubel's, a panel of our Court held that a district court had acted within its "broad discretion" when it imposed a condition allowing monitoring of a

B. *The Access Condition*

Rubel next assails Special Condition #7 (the "Access Condition"), which restricts his access to certain categories of websites during his post-incarceratory period of supervised release. It provides:

> The defendant will inform the U.S. Probation Office prior to accessing any websites within the [relevant] categories for the first time, and will not access any such websites until such access is approved by the U.S. Probation Office.
>
> . . .
>
> The U.S. Probation Office must approve any such access unless such access is otherwise barred by the terms of the defendant's supervised release, and must do so within 3 business days unless the volume of the request makes that impracticable, in which case Probation may seek the Court's permission for a longer window.

App'x 170. The categories listed are: "Adult," "Alternative Lifestyles," "Chat and Social Networks," "Dating and Personals," "Download Media," "Downloads," "Free Hosting," "Gambling," "Hacking and Warez," "Illegal Activities," "Kids and Teens," "Lingerie," "Park Domains," "Sex Education," "Weapon Related," "Web Mail," and "XXX." App'x 170. Rubel says that these "categories are impermissibly vague" and not reasonably related to the statutory sentencing factors, including because they are unduly broad. Appellant's Br. 38, 41-42.

As an initial matter, we think that the listed website categories are "sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003). We have been willing to uphold even "broad conditions of supervised release" under this standard, and we are reluctant to hold that a condition is unconstitutionally vague when it "contains [a] limiting list" such as the list the District Court provided here.[9] *Green*, 618

___

convicted defendant's "physical location and internet browsing activity" because the defendant had, among other things, used social media to contact minors and expressed the belief that "sometimes children don't say no to sexual activity because they are curious about sex or enjoy it." 783 F. App'x 77, 78-79 (2d Cir. 2019).

[9] Notably, the District Court did so at Rubel's express request. *See* Rubel's Sentencing Mem. at 8, *United States v. Rubel*, No. 09-cr-898 (S.D.N.Y. June 21, 2018), ECF No. 41. (asking the court to "specify[] categories of websites that are off limits or need pre-approval").

F.3d at 124. While Rubel conjures several hypotheticals meant to expose uncertainties he believes "doom[] these provisions," Appellant's Br. 41, we have never required that conditions "be cast in letters six feet high, or describe every possible permutation, or spell out every last, self-evident detail. Conditions may afford fair warning even if they are not precise to the point of pedantry," *United States v. Johnson*, 446 F.3d 272, 280 (2d Cir. 2006).

Moreover, the Access Condition is limited in several important ways: First, Rubel must seek approval only before he first visits a particular website. Second, Probation must give Rubel a prompt answer (within three business days) whenever he seeks to access a new website covered by one of the prohibited categories. Third, Rubel has recourse to the prosecutors and the District Court if he disagrees with Probation's application of the Access Condition. *See* App'x 139 (stating that if Rubel believes "a mistake occurred," he should "let [the government] know, and [the government] [sh]ould make sure that [the mistake] got undone," and clarifying that the District Court was "not giving [P]robation the authority to make [final] decisions about what can and cannot be blocked"). Taken together, these limitations are more than sufficient to assuage the concerns raised about the vagueness or breadth of the Access Condition. We therefore conclude that the District Court did not abuse its discretion in imposing it.

C. *The Treatment Provider Condition*

Third, Rubel challenges the related Special Condition #4 (the "Treatment Provider Condition"). This condition delegates to his sex-offender-treatment provider certain decisions about websites he may access during the course of the treatment program, as follows:

> The defendant shall undergo a sex-offense-specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program approved by the probation officer. The defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s) including submission to polygraph testing and refraining from accessing websites, chatrooms, instant messaging, or social networking sites to the extent that the sex offender treatment and/or mental health treatment program determines that such access would be detrimental to the defendant's ongoing treatment.

9

App'x 169. In Rubel's view, this condition delegates to his treatment provider "untrammeled authority to restrict . . . [his] internet access entirely," Appellant's Br. 43-46, contravening the rule that only the District Court is empowered to impose conditions of supervised release, and that the District Court may not delegate to Probation the authority to establish anything other than "details" of those conditions. *United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001); *see also United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015) ("[A] district court may not delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion."). In our view, the condition does no such thing.

The requirement that Rubel may have to temporarily (*i.e.*, while undergoing sex offender treatment) have to refrain from visiting specific websites that his treatment provider determines would impede or otherwise be detrimental to his treatment does not constitute a delegation of legal authority to the treatment provider; rather, it grants the provider the important ability to "supervise and oversee [Rubel's] treatment." *United States v. Young*, 910 F.3d 665, 671-72 (2d Cir. 2018) (affirming conditions delegating to Probation the authority to require defendant to enroll in outpatient treatment programs based on "evaluation" results); *see also Ewart*, 783 F. App'x at 79 (approving of condition that is substantially similar to the one at issue here); *cf. United States v. Degroate*, 940 F.3d 167, 177 (2d Cir. 2019) (affirming condition delegating to Probation authority to determine "curfew's start date and nightly duration," where district court had ordered the defendant to "comply with a curfew").[10] We therefore see no abuse of discretion in the District Court's decision to impose the Treatment Provider Condition.

---

[10] Of course, if the treatment provider were to try to impose a blanket ban on Rubel's right to access to the Internet, legitimate questions would arise as to whether the provider had exceeded the bounds of its rightful authority under this condition. *Cf. Degroate*, 940 F.3d at 177 (suggesting that, while Probation could "decide the days and precise timing of the mandatory [*i.e.*, court-ordered] curfew," Probation may not have had the "decisionmaking authority" to impose "a total lockdown"). Rubel would be able to raise any such questions with the District Court in due course. But neither the text of the condition nor common sense provides a basis to assume that a reasonable treatment provider would take such a radical action.

D. *The Social Media Condition*

Finally, and for the first time on appeal, Rubel takes issue with Special Condition #6 (the "Facebook Condition"). It provides: "The defendant will not access any websites, chatrooms, instant messaging, or social networking sites where the defendant's criminal history—including this conviction—would render such access in violation of the terms of service of that website, chatroom, instant messaging, or social networking site." App'x 170. Rubel construes this condition as a "restriction on Facebook, and potentially all social media," insisting that it violates his First Amendment right to access social media websites. Appellant's Br. 46; *see also Packingham v. North Carolina*, 137 S. Ct. 1730, 1733, 1738 (2017) (striking down law that functioned as blanket ban on all sex offenders from accessing any "commercial social networking Web site where the sex offender knows that the site permits minor children").

We find Rubel's arguments as to this condition to be wholly unpersuasive. The record provides no support for the notion that the Facebook Condition prevents him from accessing all social media websites; rather, the only social media website that the record establishes Rubel would not be able to access because of this condition is Facebook itself. *See* Appellant's Br. 46; Gov't Br. 58. Although we have explained that, following the Supreme Court's decision in *Packingham*, a defendant "has a First Amendment right to be able to email, blog, and discuss the issues of the day on the Internet," we have never recognized a constitutional right to access Facebook specifically. *United States v. Eaglin*, 913 F.3d 88, 96 (2d Cir. 2019). The absence of such a precedent should come as no great surprise: Facebook is certainly one method of emailing, blogging, and discussing issues, but it cannot be seriously argued that it is the *only* means of engaging in those activities.

Even assuming that the Facebook Condition "implicat[es] certain constitutionally protected interests," we think it obvious that this "burdening condition" (such as it is) is well-calibrated "to the underlying government interest" of preventing Rubel from contacting minors, both for deterrence reasons and to protect the public. *United States v. Myers*, 426 F.3d 117, 126 n.9 (2d Cir. 2005). As explained above, Rubel made unauthorized contact with minors, used Facebook in violation of the terms of his supervised release and lied about

doing so, and claimed there was nothing wrong with having sex with minors. We thus easily conclude that the District Court acted well within its discretion in imposing the Facebook Condition.

\* \* \*

For the reasons set forth above, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court