17-1224-cr
*U.S. v. Eaglin*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2017

(Submitted: March 7, 2018 Decided: January 11, 2019)

Docket No. 17-1224-cr

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

JARRET EAGLIN, AKA JARRET L. EAGLIN,

*Defendant-Appellant.*

B e f o r e :

CABRANES and CARNEY, *Circuit Judges*, and VILARDO, *District Judge.*[*]

In 2012, defendant-appellant Jarret Eaglin was convicted of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). In 2017, the United States District Court for the Northern District of New York (D'Agostino, *J.*) found that Eaglin violated certain conditions of supervised release imposed as a consequence of the 2012 conviction. As

---

[*] Judge Lawrence J. Vilardo, of the United States District Court for the Western District of New York, sitting by designation.

punishment, it imposed a one-year term of imprisonment to be followed by eleven years of supervised release. In this appeal, Eaglin challenges two conditions of his 2017 supervised release: a ban on accessing the Internet without prior specific permission of the court and a total ban on viewing or possessing adult pornography. On abuse of discretion review, we conclude that the record as it stands does not support the imposition of these sweeping conditions. Eaglin was twice convicted over fifteen years ago, when he was twenty-one and twenty-two years old, of having unlawful sexual relationships with two thirteen-year old girls, and since then has substantially, if imperfectly, complied with the terms of his extended periods of supervised release. His crime of conviction now is failure to register as a sex offender. The District Court's explanation for its imposition of these conditions was wanting, but in light of the record before us we conclude that imposition of both the Internet ban and the pornography ban was substantively unreasonable on this record as these conditions are not reasonably related to the relevant sentencing factors; further, they impose a greater restriction than reasonably necessary to achieve the goals of sentencing in light of Eaglin's crime of conviction and his criminal history. Accordingly, the cause is **REMANDED** for resentencing consistent with this opinion.

———————

Lisa A. Peebles, Federal Public Defender, Molly Corbett, James P. Egan, Assistant Federal Public Defenders, Office of the Federal Public Defender, Albany, New York, *for Defendant-Appellant*.

Richard D. Belliss, Paul D. Silver, Assistant United States Attorneys, *for* Grant C. Jaquith, Acting United States Attorney for the Northern District of New York, Albany, New York, *for Appellee*.

———————

SUSAN L. CARNEY, *Circuit Judge*:

This case concerns the imposition of broad bans on Internet access and on possession of legal adult pornography as conditions of a multi-year term of supervised

2

release. We conclude that the record here does not support imposition of these sweeping prohibitions. To be sustained, a virtually categorical prohibition on a defendant's use of any device to access the Internet—a technology around which our society now unmistakably turns—must be carefully explained and robustly supported by a district court. As the Supreme Court recently reiterated, "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 138 S. Ct. 2206, 2210 (2018) (quoting *Riley v. California*, 134 S. Ct. 2473, 2428 (2014)); *see also Packingham v. North Carolina*, 137 S. Ct. 1730 (2017). Although Internet access through smart phones and other devices undeniably offers the potential for wrongdoing, to consign an individual to a life virtually without access to the Internet is to exile that individual from society. The record here inadequately supports the District Court's decision to take that drastic step.

On abuse of discretion review, we conclude that both the virtual ban on Internet access and the prohibition on viewing or possessing adult pornography are substantively unreasonable because, given the record before us, they are not reasonably related to the sentencing factors and impose a greater restriction than reasonably necessary to achieve the goals of sentencing. The cause is **REMANDED** for resentencing consistent with this opinion.

**BACKGROUND²**

Defendant-Appellant Jarret Eaglin was convicted in 2003 and 2004 in New Hampshire state court on four counts of felonious sexual assault. His convictions stem from his sexual relationships with two thirteen-year-old girls in that state when he was twenty-one and twenty-two years old. Under New Hampshire law, "felonious sexual assault" is a statutory crime that is based on the age of the younger party alone, without regard to the age or mens rea of the perpetrator. N.H. Rev. Stat. § 632-A:3 (2003) (to "[e]ngage[] in sexual penetration with a person . . . under 16 years of age" is a class B felony); *see Goodrow v. Perrin*, 119 N.H. 483, 488 (1979) (no scienter requirement in § 632-A:3). For the convictions related to the first victim, Eaglin received a sentence of twelve months' incarceration and two years' probation; for the conviction related to the second victim, he received a deferred sentence and five years' probation. The convictions render Eaglin a "sex offender" under federal law, 34 U.S.C. § 20911, and obligate him to comply with certain federal statutory registration requirements applicable to sex offenders, 18 U.S.C. § 2250.

In the fifteen years that have passed since his first convictions, Eaglin has struggled to comply fully with the multiple conditions of his supervised release, which have been renewed and revised on several occasions. He also has struggled to abide by the requirements resulting from his sex offender status. In 2005, for example, he was remanded to custody for three breaches: failing to report a 2004 arrest following a

_____

² The relevant facts are largely undisputed by the parties and are drawn from the documentary record including the 2012 Presentence Investigation Report ("PSR") prepared with regard to defendant Eaglin. We note in the text any significant differences in the parties' accounts.

4

domestic dispute with his girlfriend,[3] failing to complete a sex offender counseling program, and failing to obtain permission from his probation officer before changing his place of residence. More recently, in September 2012, Eaglin pleaded guilty in the U.S. District Court for the District of New Hampshire to violating the federal registration statute by failing to register as a sex offender when he moved from New Hampshire to New York in August 2011. For that conviction, he was sentenced by Judge Joseph A. Diclerico, Jr., to twenty-one months' imprisonment and fifteen years of supervised release.

In early 2014, the job of monitoring Eaglin's compliance with the terms of his supervised release for his 2012 conviction was transferred to the Northern District of New York, so that Eaglin could legally return to Glen Falls, New York, and live near his immediate family. His compliance challenges continued, however, in New York: in May 2014, Eaglin was penalized with a two-month home detention period for his failure to report incidental contact with a minor and his chronic unemployment. As part of this detention, Eaglin was instructed to stay away from his former residence, where the incidental contact occurred. In July 2014, he was again penalized—this time, with a two-month period of curfew—after he failed to report that he had returned briefly without permission to his former residence (where his sister then resided) to get a ride to his sex offender treatment program after (as the Probation Office described it) "the bus he was supposed to take to treatment broke down." App. 14. And in 2015, a warrant issued for Eaglin's arrest after, over a period of months, he violated several conditions of release

---

[3] As a result of that dispute, Eaglin was convicted in New Hampshire state proceedings of resisting arrest and simple assault and sentenced to six months' imprisonment.

5

by failing to participate in a sex offender treatment program, failing to notify his probation officer of a change in employment, failing to register a new address with the state sex offender registry, viewing and possessing adult pornography, and traveling outside the Northern District of New York to central Massachusetts without permission. For those violations, Judge D'Agostino of the U.S. District Court for the Northern District of New York sentenced Eaglin to sixteen months of incarceration, to be followed by thirteen years of supervised release. On the recommendation of the government and of the Probation Office, the District Court continued to impose conditions banning access to sexually explicit materials and banning access to the Internet unless he participated in a monitoring program that would be run by Probation.

Eaglin was released from prison and returned to supervised release status in August 2016. Once again, Eaglin struggled to comply with the terms of release. In April 2017, Eaglin admitted to viewing and possessing sexually explicit images of adults, in violation of the special conditions to which he was subject, and to using email accounts that he had not registered with the New York state sex offender registry, as required by law. App. 69-70; *see* N.Y. Correct. Law § 168-f(4) (requiring that a sex offender provide the state any "internet identifiers that such offender uses," including email accounts). For those violations, the District Court, now familiar with Eaglin from his repeated visits on conditions violations of various sorts, sentenced him anew to twelve months of imprisonment and eleven years of supervised release.

In connection with those April 2017 proceedings, Eaglin's counsel requested by letter that the District Court not reimpose two specific conditions of release to which Eaglin earlier had been subject: the restrictions on his possession and use of Internet-

capable devices, App. 51, and the condition that he "not view, possess, own, subscribe to or purchase any material, including pictures, videotapes, films, magazines, books, telephone services, electronic media, computer programs, or computer service[s] that depict sexually explicit conduct," *id.* at 52. He argued that neither of these conditions was reasonably related to Eaglin's 2012 offense of conviction (his failure to register) and that they imposed a "greater deprivation of liberty than reasonably necessary" to serve the purposes of sentencing contrary to the principles underlying 18 U.S.C. § 3553 ("Imposition of sentence"). *Id*. at 54-58.

For its part, the government took a diametrically opposed view, urging the court both to reimpose the relevant conditions and to expand their scope: in particular, that the Internet-capable device restriction "be modified such that the defendant also be prohibited from accessing the Internet" entirely. App. 59. The government justified its request by pointing to a 2015 incident in which, without the permission of his probation officer, Eaglin traveled out-of-state to Massachusetts to meet an adult woman whom he met through an online dating website.[4] This travel, it explained, was an example of Eaglin's continued efforts to "find sexual partners and to access pornography," which it identified as "risk factors."[5] App. 60. The government also cited Eaglin's efforts to "hide [his] phone from Probation because he knew he would use the phone to try to find

---

[4] That woman later told police that Eaglin had raped her, but shortly thereafter recanted her statement. All related charges against Eaglin were ultimately dismissed.

[5] In its 2017 presentencing letter, the government advised that it viewed Eaglin's searches for sexual partners and for pornography not as "otherwise healthy sexual behavior," but as activities that "may lead to high-risk behavior." App. 60.

sexual partners and view pornography." *Id.* The government presented these conditions to the district court as "necessary in this case to protect the public, to deter the defendant from committing future violations, and to promote the rehabilitation of the defendant." *Id.*

At sentencing, the District Court addressed the proposed pornography and Internet bans together, expressing the view that each was "very, very necessary" because Eaglin had used "an Internet-capable device to look for sexual partners and to view pornography." App. 73. The court continued,

> I think that it is very risky for you, sir, to be using Internet devices and I think that based upon your previous conviction, your underlying conviction, that it is very advisable that you stay off of the Internet, that you are prevented from using or viewing pornography. I'm aware it's not child pornography at this point that is being viewed but these appear to be significant risk factors to you in terms of your conduct.

*Id.* at 73-74. Remarking on the Probation Office's report that Eaglin had attempted to hide his smartphone from his probation officer, the District Court commented without further explanation that "when you get Internet-capable devices, when you view pornography, I happen to believe that the community is at risk from you." *Id.* at 74. As the government had requested, the District Court then imposed conditions barring Eaglin from "access[ing] the Internet from any computer or Internet-capable device in any location unless authorized by the Court or as directed by the U.S. Probation Office upon approval of the Court," *id.* at 77-78, and banning him entirely from viewing or

8

possessing material "that depict[s] sexually explicit conduct," as more fully set forth in the margin.[6] *Id*. at 77.

Eaglin timely appealed.

## DISCUSSION

We review the imposition of conditions of supervised release for abuse of discretion and any related legal rulings de novo. *United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006). We review sentencing decisions for procedural and substantive reasonableness. *See United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).

For a sentence to be procedurally reasonable, a District Court must "make an individualized assessment when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). Any explanation provided by the District Court must be adequately supported by the record. We reverse a sentence for substantive unreasonableness only "for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Mi Sun Cho*, 713 F.3d 716, 723 (2d Cir. 2013) (per curiam) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). We have held as a general matter that a

---

[6] The pornography condition provides that Eaglin "must not view, possess, own, subscribe to or purchase any material, including pictures, videotapes, films, magazines, books, telephone services, electronic media, computer programs, or computer services that depict sexually explicit conduct, as defined in 18 U.S.C. § 2256(2)." *Id*. It identifies no possible exceptions. *See* App. 77-78 (quoting District Judge's oral pronouncement).

district court "may impose special conditions of supervised release that are reasonably related to certain statutory factors governing sentencing, 'involve[] no greater deprivation of liberty than is reasonably necessary' to implement the statutory purposes of sentencing, and are consistent with pertinent Sentencing Commission policy statements." *United States v. Myers*, 426 F.3d 117, 123-24 (2d Cir. 2005) (quoting 18 U.S.C. § 3583(d)); *see also* 18 U.S.C. § 3563; U.S.S.G. § 5D1.3(b). The "certain statutory factors governing sentencing" to which we referred in *Myers* are set out in 18 U.S.C. § 3553(a) and include, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as:

> the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote the respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a)(2). Although we generally defer to the District Court's discretionary assessment of the suitability of conditions of supervised release, we will "carefully scrutinize unusual and severe conditions." *United States v. Peterson*, 248 F.3d 79, 82 (2d Cir. 2001) (per curiam) (quoting *United States v. Doe*, 79 F.3d 1309, 1319-20 (2d Cir. 1996)). The conditions imposed here—prohibiting access to the Internet and to legal adult pornography—are such unusual and severe conditions; they merit our close examination. Eaglin argues primarily that the eleven-year virtually categorical bans on his access to the Internet and to legal adult pornography are overly broad and unreasonably onerous. Both involve, he contends, a greater deprivation of liberty than

10

is reasonably necessary to implement the statutory purposes we have just set forth. He argues further that the District Court did not justify either condition sufficiently, on the record, as reasonably related to any of the relevant sentencing factors.

Upon due consideration, we agree with Eaglin that the record as it now stands reveals an insufficient connection between each of these two conditions and the offense of conviction. The record also fails to reveal the District Court's basis for identifying a connection between the conditions and the likelihood of harm. The District Court's general reference to the conditions as being necessary to protect the community does not suffice, even on the background of Eaglin's repeated infractions of the better-founded terms of supervised release. We must conclude, therefore, that, on this record, these conditions are substantively unreasonable because they are not reasonably related to the relevant sentencing factors and involve a greater deprivation of liberty than is reasonably necessary. The cause is remanded for further consideration and resentencing in accordance with this opinion. We set forth our reasons in greater detail below.

## I.     Internet ban

Where a condition of supervised release implicates a constitutional right, we conduct a more searching review in light of the "heightened constitutional concerns" presented in such cases. *Myers*, 426 F.3d at 126. The government argues that Eaglin has no constitutional right to access the Internet. We reject that position as outdated and in conflict with recent Supreme Court precedent. The Supreme Court forcefully identified such a right in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), and it suggested as much in *Riley v. California*, 134 S. Ct. 2473, 2428 (2014), as we adverted to above.

In *Packingham*, the Supreme Court struck down as unconstitutional a North Carolina criminal statute that made it a felony for sex offenders to access certain social media websites. 137 S. Ct. at 1738. The Court reasoned that, "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." *Id.* at 1737. By enforcing such a restriction, the Court elaborated, "North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Id*. The Court stated that it had never "approved of a statute as broad in its reach." *Id*.

The restriction in *Packingham* created a permanent restriction in the form of a criminal statute applicable to all registered sex offenders. *See id.* (noting the "troubling fact" that the offending statute imposed restrictions on persons who were no longer subject to the supervision of the criminal justice system). The restriction that Eaglin challenges here, in contrast, was imposed as a condition of supervised release that applies to Eaglin alone and for a limited albeit lengthy duration. Certain severe restrictions may be unconstitutional when cast as a broadly-applicable criminal prohibition, but permissible when imposed on an individual as a condition of supervised release. *See Farrell v. Burke*, 449 F.3d 470, 497 (2d Cir. 2006) ("[T]he First Amendment rights of parolees are circumscribed."). In our view, *Packingham* nevertheless establishes that, in modern society, citizens have a First Amendment right to access the Internet.

The substance of the Internet ban imposed on Eaglin is even broader in its terms, if not in its application, than that struck down in *Packingham*. Whereas the *Packingham* statute banned access only to certain social networking sites where minors may be present, such as Facebook and Twitter, the condition imposed on Eaglin prohibits his access to *all* websites.[7] It therefore implicates the same First Amendment concerns that were at issue in *Packingham*: Eaglin has a First Amendment right to be able to email, blog, and discuss the issues of the day on the Internet while he is on supervised release. Moreover, one of the conditions of supervised release is that he remain employed: to search for a job in 2019, the Internet is nearly essential, as the Court in *Packingham* recognized. 137 S. Ct. at 1737.

Even before *Packingham* was decided, we rejected total bans on Internet access in several cases challenging similar conditions of supervised release. For example, in *Peterson*, in 2001, we vacated a ban on Internet access as overly broad where the defendant had been convicted of bank larceny but had been charged with violating conditions of supervised release by viewing adult pornography. 248 F.3d at 82. Although we acknowledged "a relationship" between Peterson's Internet restriction and his conviction for incest predating his larceny conviction, we concluded nonetheless that "the condition [was] neither *reasonably* related to that conviction nor reasonably necessary to the sentencing objectives." *Id*. at 83 (emphasis in original; internal quotation marks omitted). Critically, the record in *Peterson* displayed "no

---

[7] Because the District Court adopted the condition on the government's recommendation for a complete Internet ban and required specific permission from the court for any desired instances of internet access, we understand the condition effectively to operate as a total Internet ban.

indication that Peterson's past incest offense had any connection to computers or to the Internet." *Id*. We thus determined that the facts of Peterson's case did not warrant "so broad a prohibition" on his Internet usage. *Id.*

Similarly, in *United States v. Sofsky*, in 2002, we held that a total Internet ban inflicted a greater deprivation of liberty than was reasonably necessary in the case of a defendant who had illegally downloaded child pornography. 287 F.3d 122, 126 (2d Cir. 2002). Like the Court in *Packingham*, we were concerned that such a ban "prevents use of e-mail . . . [and] other common-place computer uses such as doing any research, getting a weather forecast, or reading a newspaper online"—activities that raise no obvious risk of criminal activity. *Id*. (internal quotation marks omitted).

Our sister circuits have similarly rejected absolute Internet bans even where the defendant had used the computer for ill in his crime of conviction. *See, e.g., United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016) (rejecting Internet ban where defendant conspired to commit securities fraud); *United States v. Wiedower*, 634 F.3d 490, 495 (8th Cir. 2011) (rejecting Internet ban where defendant was convicted of possessing child pornography); *United States v. Perazza-Mercado*, 553 F.3d 65, 72-74 (1st Cir. 2009) (rejecting Internet ban in the home where crime of conviction involved defendant knowingly engaging in sexual contact with a female under the age of twelve); *United States v. Freeman*, 316 F.3d 386, 391-92 (3d Cir. 2003) (rejecting Internet ban where defendant was convicted of receiving and possessing child pornography); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (rejecting Internet ban where defendant was convicted of possessing child pornography).

In light of our precedent, and as emphasized by *Packingham*'s recognition of a First Amendment right to access certain social networking websites, the imposition of a total Internet ban as a condition of supervised release inflicts a severe deprivation of liberty. In only highly unusual circumstances will a total Internet ban imposed as a condition of supervised release be substantively reasonable and not amount to a "'greater deprivation of liberty than is reasonably necessary' to implement the statutory purposes of sentencing." *Myers*, 426 F.3d at 123-24 (quoting 18 U.S.C. § 3583(d)). On the record before us, the imposition of a total Internet ban for the eleven-year period of Eaglin's supervised release is substantively unreasonable as it has not been shown to be "reasonably related" to the statutory factors governing sentencing nor to be reasonably necessary to effectuate the sentencing objectives.

First, the record does not demonstrate that an Internet ban is reasonably related to "the nature and circumstances" of the crime of conviction or to Eaglin's "history and characteristics." 18 U.S.C. § 3553(a)(1). So far as we can see, the Internet has nothing to do with Eaglin's 2012 offense of failing to register as a sex offender. Nor has Eaglin been charged with or convicted of a sex crime involving Internet use. This is not a case in which the crime of conviction or the violation of supervised release involved using the Internet to prey on children or otherwise endanger the public. *Cf. Johnson*, 446 F.3d at 282-83 (upholding ban where defendant previously used the Internet to convince children to meet him and have sex). Indeed, as the District Court noted, the record contains no evidence that Eaglin accessed child pornography online (or at all). As we warned in *Peterson*, recognizing that "a computer with Internet access offers the *possibility* of abusive use for illegitimate purposes" provides an insufficient justification

15

for an all-out prohibition absent a close connection to the defendant's past illegal conduct, or strong independent grounds for linking it to a real potential for future harm. 248 F.3d at 83 (emphasis added). Here, neither the nature and circumstances of Eaglin's failure to register nor his history and characteristics meaningfully support the drastic step of imposing a complete Internet ban on Eaglin as means of protecting the public or deterring recidivism.[8]

Moreover, imposing an Internet ban would arguably *impair* Eaglin's ability to receive "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"—one of the goals of sentencing. 18 U.S.C. § 3553(a)(2)(D). Today, as we observed above, access to the Internet is essential to reintegrating supervisees into everyday life, as it provides avenues for seeking employment, banking, accessing government resources, reading about current events, and educating oneself. *See, e.g., Carpenter*, 138 S. Ct. at 2210 (carrying a cell or smart phone "is indispensable to participation in modern society"). Yet when imposing the sweeping Internet ban challenged here, the District Court did not address on the record

---

[8] Although the District Court did not address these concerns on the record, we observe and note our concern that the government's sentencing memorandum adverted to "prior sexual assault convictions involving both minor and adult victims, one of which involved the knife point rape of an adult female." App. 60. Other than Eaglin's 2003 and 2004 convictions for non-violent felonious sexual assault, the record on appeal reflects no convictions for sexual assault. The record does, however, reflect that Eaglin was acquitted by a jury in 2005 of charges that he had sexually assaulted a girlfriend at knifepoint. And in 2015, as mentioned above, Eaglin was arrested for rape, and the charges were dismissed when the woman recanted her initial statement and told police she had not been raped. To the extent that the government intended to invite the District Court to consider charges of which Eaglin was not convicted, we nonetheless question whether a total, outright Internet ban is sustainable in place of the conditions monitoring Internet use previously imposed.

16

the likely adverse impact of isolating Eaglin from these important positive uses of the Internet or engage in any explicit balancing of these competing interests.

Finally, it is not clear from the record that an Internet ban was reasonably necessary to effectuate any of the purposes of 18 U.S.C. § 3553(a)(2). Although the District Court asserted that "the community is at risk from" Eaglin when he accesses the Internet, App. at 74, we are not persuaded that the Internet ban is reasonably necessary to "protect the public from [Eaglin's] further crimes," 18 U.S.C. § 3553(a)(2)(C). Both the government and the District Court appear to have viewed a total Internet ban as a necessary means of preventing Eaglin from viewing adult pornography (of which more will be said below) and from identifying potential romantic or sexual partners.[9] *See* Appellee's Br. 24-25; App. 73-74. But the earlier Internet restriction placed on Eaglin, under which his Internet use was monitored by the Probation Office, remained to all outward appearances a viable option. Such a restriction would adequately protect the public from Eaglin's potential misuse of the Internet while imposing a more reasonable burden on Eaglin's First Amendment interest in accessing the Internet. *See United States v. Browder*, 866 F.3d 504, 512 (2d Cir. 2017) (holding that a condition of supervised release that imposed a "narrowly tailored" computer monitoring program on a defendant convicted of child pornography possession was not an excessive deprivation

---

[9] To the extent that the District Court disapproved of Eaglin seeking out consensual adult sexual partners, the absence of a detailed explanation for its disapproval leaves us concerned. The "right to enter into and to maintain intimate personal relationships," including sexual ones, is a "well-established" liberty interest. *United States v. Reeves*, 591 F.3d 77, 82 (2d Cir. 2010). Unless the record contains strong evidence of a reason for concern—and we saw none here—a court imposing conditions of supervised release must tread especially lightly in this area.

of liberty). The record does not explain why such monitoring was insufficient, other than by noting the Probation Office's concern that, while under that restriction, Eaglin successfully contacted an adult woman who agreed to an encounter with him. If Eaglin's potential contact with children is of concern, despite the record's dearth of evidence suggesting that Eaglin is likely to seek out children on social media or prey on them in reality, the District Court must make a record of the basis for such concerns and craft restrictions that address them with particularity. As the Supreme Court noted in *Packingham*, such specific and narrowly tailored restrictions "must be the State's first resort to ward off the serious harm that sexual crimes inflict." 137 S. Ct at 1737.

In short, the Internet ban imposed on Eaglin severely encroached on his First Amendment rights by depriving him of the opportunity to engage with modern society. And it did so without any clear evidence in the record that the condition was warranted by Eaglin's criminal history or characteristics, the need for deterrence or to protect the public, or the court's desire to provide necessary rehabilitative services to Eaglin. We therefore conclude that the District Court exceeded the permissible bounds of its discretion in imposing this substantively unreasonable condition: the untailored Internet ban is not reasonably related to the relevant sentencing factors and involves a greater deprivation of liberty than is reasonably necessary to serve the relevant sentencing objectives.

## II.    Pornography Ban

Eaglin also challenges the condition of supervised release that prohibits him from viewing or possessing legal adult pornography. We tolerate such conditions only in limited circumstances: "Pornographic materials . . . receive full First

18

Amendment protection when in the possession of ordinary adults, but may be regulated in the hands of parolees to a much greater extent." *Farrell*, 449 F.3d at 497. To be permissible, however, a condition prohibiting access to adult pornography must be reasonably related to the enumerated statutory factors and must impose no greater deprivation of liberty than reasonably necessary. *See United States v. Simmons*, 343 F.3d 72, 80 (2d Cir. 2003).

Applying these standards, we have routinely rejected bans on possession of adult pornography as a condition of supervised release where the district court failed adequately to connect the need for that condition to the defendant's likelihood of recidivism or to another sentencing factor. *See, e.g., United States v. Brown*, 653 F. App'x 50, 52 (2d Cir. 2016) (summary order); *United States v. Singer*, 693 F. App'x 47, 48 (2d Cir. 2017) (summary order). Such bans must be supported on the record by detailed factual findings establishing that the proposed ban is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a) and that it is reasonably necessary to accomplish their objectives. A general reference to "the public interest" ordinarily will not suffice.

In this case, the District Court identified nothing in the record that adequately justifies imposing an adult pornography ban. This District Court said only that "when you view pornography, I happen to believe that the community is at risk from you." App. 74. This general statement does not explain why possessing or viewing adult pornography might in the court's view prompt Eaglin to commit a new offense or cause him to pose a risk to the public. Although the District Court repeatedly described Eaglin's viewing of pornography as "risky," it never explained *why* such behavior represented a particular risk. *See* App. 73-74. Upon review of the record, we have

19

identified no evidence that would support such a finding. Nor does the record otherwise demonstrate that the condition was reasonably related to Eaglin's criminal history or the other sentencing factors of factors set forth in 18 U.S.C. § 3553(a).

In requesting the imposition of such a condition, the government cited our recent nonprecedential decision in *United States v. Springer*, 684 F. App'x 37 (2d Cir. 2017) (summary order), where we upheld an adult pornography ban as a condition of supervised release. But there, the record was considerably more robust than here, and the district court "made clear the reasons it incorporated the pornography restrictions into Springer's release conditions." *Id.* at 40. In addition to Springer's extensive record of violating release conditions, the court there considered Springer's history of sex offenses involving both children and adults. (Springer had six such convictions, five of them involving children and the sixth involving a teenager who was 19 years old). The District Court also had before it an evaluation submitted by a mental health provider explicitly "recommending that Springer be prohibited from accessing any pornographic materials." *Id.*

Some comments made by the District Court here appear to reflect a worry that Eaglin might one day view or possess *child* pornography. *See, e.g.*, App. 73-74 ("I'm aware it's not child pornography at this point that is being viewed but [Internet access and pornography] appear to be significant risk factors to you[.]"). But, if that was the reason for the ban, the court did little to explain on the record the source of that consternation. The government has not directed us to record evidence suggesting that Eaglin has a history of viewing child pornography or that he has expressed a desire to do so such that the public needs to be protected from this potential future crime. The

connection to children that Eaglin's criminal record evinces is found only in the statutory convictions for his sexual relationships with two teenage girls fifteen years ago when he was twenty-one and twenty-two years old. We do not minimize the gravity of those statutory crimes. But the record reflects no finding as to Eaglin's *mens rea* with respect to those offenses, and neither involved child pornography. And the record of any sexual involvement by him with children in the past fifteen years is blank, so far as we can see.

Before imposing a special condition such as this ban on adult pornography, a district court must make factual findings supporting its view that the condition is designed to address a realistic danger and that the deprivation the condition creates is no greater than reasonably necessary to serve the sentencing factors. *See Myers*, 426 F.3d at 128. Here, the record does not suggest that Eaglin is likely to seek out child pornography, so we are unable to count that risk as a legitimate basis for this condition.

And even if the District Court had found that Eaglin presented some risk of seeking to obtain and possess child pornography, it would still need to support its blanket ban on his accessing *adult* pornography by reference to the relevant statutory factors. Here, the District Court erroneously treated the possession of adult pornography as reprehensible in itself, rather than as an otherwise lawful action that violated Eaglin's conditions of supervised release. Imposing a wholesale ban on accessing adult pornography might be justified where the offense of conviction involved the creation of adult pornography with unconsenting victims, *see, e.g.*, *Simmons*, 343 F.3d at 82, or where a mental health professional testified that viewing pornography would be detrimental to the defendant's rehabilitation, *see, e.g.*, *Springer*,

21

684 F. App'x at 40. In line with the decisions of many other courts, however, we conclude that a blanket ban on possessing or accessing adult pornography cannot be imposed unless such a ban on *adult* pornography is reasonably related to the sentencing factors and reasonably necessary to accomplish the goals of sentencing.

Finally, the record provides inadequate support for the proposition that a decade-long deprivation of access to constitutionally permissible material is reasonably necessary to protect the public or meet the other sentencing goals of 18 U.S.C. § 3553(a). In finding an adult pornography ban to be more restrictive than necessary to achieve the goals of sentencing where there is little indication that access to such material will impede a defendant's rehabilitation or put the community at risk, we have company. *See United States v. Taylor*, 796 F.3d 788, 793 (7th Cir. 2015) ("It is true that both Taylor's crime and adult pornography have to do with sexual activity. But there is no evidence that viewing or listening to adult pornography in any way led Taylor to commit the crime here, or has led him to commit any other crime, nor is there any evidence in the record that viewing or listening to adult pornography would make the repeat of Taylor's crime or similar crimes any more likely."); *United States v. Salazar*, 743 F.3d 445, 452 (5th Cir. 2014) ("It is hard to imagine how preventing Salazar from accessing sexually stimulating materials would prevent future criminal conduct when there is no indication in the record that Salazar has an unhealthy relationship with such materials or that such materials contributed to his underlying crimes or other violations."); *United States v. Perazza-Mercado*, 553 F.3d 65, 76 (1st Cir. 2009) ("If the district court believed that there was some relationship between the defendant's possession and use of adult pornography and the likelihood that he would engage in sexual misconduct involving

22

young girls, the court should have explained the basis for that conclusion."); *United States v. Voelker*, 489 F.3d 139, 152-53 (3d Cir. 2007) ("[N]othing on this record suggests that sexually explicit material involving only adults contributed in any way to Voelker's offense, nor is there any reason to believe that viewing such material would cause Voelker to reoffend").

In sum, on this record, we can discern no reasonable relation between Eaglin's underlying offense of failure to register, his criminal history (including his fifteen-year old statutory rape crimes), his likelihood of recidivism, or need for rehabilitative service, on the one hand, and the District Court's wholesale restriction of his possession of legal adult pornography, on the other. Nor have we been directed to any record evidence suggesting Eaglin's rehabilitation will be impaired by viewing such pornography. We conclude, therefore, that the District Court's imposition of this condition was substantively unreasonable in that it was not reasonably related to the sentencing factors and not reasonably necessary to achieve a statutorily recognized sentencing objective. Accordingly, the condition must be struck.

## CONCLUSION

We conclude that the special conditions of supervised release banning access to the Internet and to adult pornography are substantively unreasonable in the circumstances presented here because neither is reasonably related to the relevant sentencing factors and both involve a greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing. Accordingly, we **REMAND** the cause for resentencing consistent with this opinion.