22-1385-cr
*United States v. Salazar*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the sixth day of July, two thousand twenty-three.

PRESENT:    DEBRA ANN LIVINGSTON,
            DENNY CHIN,
            MARIA ARAÚJO KAHN,
                 *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                 *Appellee,*


          -v-                                    22-1385-cr

MIGUEL SALAZAR,
                 *Defendant-Appellant.*


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FOR APPELLEE:                EMILY DEAN, Assistant United States
                             Attorney (Jo Ann M. Navickas, Assistant
                             United States Attorney, *on the brief*), *for* Breon
                             Peace, United States Attorney for the Eastern
                             District of New York, Brooklyn, NY.

FOR DEFENDANT-APPELLANT:    SARAH BAUMGARTEL, Federal Defenders of New York, Inc., New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART** and the case is **REMANDED**.

Defendant-Appellant Miguel Salazar appeals from a judgment of the district court convicting him, upon a guilty plea, of one count of possessing child pornography.   The district court sentenced Salazar principally to thirty months' imprisonment and five years' supervised release.   The court imposed numerous standard and special conditions of supervised release, two of which Salazar now challenges on appeal.   One condition apparently limits Salazar to possessing a single internet-capable electronic device and authorizes the U.S. Probation Office ("Probation") to monitor all the data on that device at any time and for any reason.   The other condition prohibits Salazar from viewing legal sexually explicit content on any internet-capable device.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

The facts concerning Salazar's offense conduct are not in dispute. In early 2020, federal investigators became aware that a social media user had uploaded three images depicting child sexual abuse. After determining that the user was Salazar, investigators obtained and executed a search warrant for Salazar's home in Queens, New York. Salazar confessed to viewing child pornography on the so-called "dark web" after searching for drugs; he also admitted he had uploaded the images of child sexual abuse. Salazar consented to the search of his Google Drive account, and agents seized five electronic devices from his bedroom. In total, the devices and account contained seventy-one images and five videos of child pornography. At the time he first accessed child pornography, Salazar was nineteen years old.

Salazar was indicted on April 20, 2021, and arrested the following week. On June 29, 2021, pursuant to a plea agreement, he pleaded guilty to the sole count of the indictment, possession of child pornography.

Prior to sentencing, Probation prepared a detailed presentence investigation report (the "PSR"). The PSR describes Salazar's troubled childhood and family life, his history of abusing alcohol and illicit substances, and his unsteady participation in psychotherapy and substance abuse treatment programs. At sentencing, neither the Government nor Salazar objected to any part of the PSR, and the district court adopted the factual recitations set forth in the PSR along with its calculation of the applicable sentencing range under the U.S. Sentencing Guidelines.

3

After discussing the length of Salazar's custodial sentence and term of supervised release, the district court turned to the conditions of supervised release. Several proposed conditions generated lengthy discussion, and it became evident that defense counsel had not been provided with the proposed conditions before sentencing.

The district court read the proposed conditions, including the two that are at issue on this appeal. First, Salazar was required to "cooperate with [Probation's] Computer and Internet Management Monitoring Program," App'x at 112, pursuant to which Salazar "may be limited to possessing only one personal Internet-capable device," *id*. at 113. In connection with this condition, Probation was permitted to "capture and analyze all data processed by and/or contained on the device, including the geolocation of the device" and "may access the device . . . at any time with or without suspicion that Mr. Salazar[] violated the conditions of his release." *Id*. at 112-13. Second, Salazar was prohibited from using a computer or other internet-capable or electronic device to access "any visual depiction of . . . 'sexually explicit content,'" as defined in 18 U.S.C. § 2256. *Id*. at 111-12.

Salazar's counsel expressed concern about both conditions, indicating Probation had not provided a draft of the conditions in advance of the hearing.[1] As to

---

[1] Counsel has advised this Court that judges in the Eastern District of New York have different practices with respect to disclosing proposed special conditions of supervised release to counsel in advance of sentencing. Some judges permit Probation to disclose proposed special conditions to defense counsel, while others do not, and some judges require defense

4

the monitoring condition, counsel objected that the geolocation provision was "overly broad" and lacked a nexus to Salazar's conduct. *Id.* at 122-23. The district court declined to change the condition. As to the condition about sexually explicit content, counsel again objected that the condition was not related to the offense to which Salazar had pleaded guilty. The district court observed that Probation had "found there is a greater likelihood for [child pornography] conduct to reoccur where the individual . . . is permitted to engage in adult pornography." *Id.* at 118. The court added that the condition was warranted because Salazar's "addiction issues . . . kind of propel his desire to view child pornography." *Id.* at 119. The district court modified the condition, however, to provide for the possibility that the condition might be discontinued "upon a finding by [a licensed] mental health provider that it's not necessary." *Id.* at 120. The district court proceeded to impose Salazar's sentence, including the conditions regarding monitoring and sexually explicit content.

counsel to request disclosure without knowing whether any special conditions are being considered. Here, the lack of clarity about the district court's practice resulted in miscommunication and recrimination among Probation, defense counsel, and the court. We caution that the better practice is for Probation to provide counsel with draft special conditions in advance as a matter of course, rather than for counsel to have to request them. This is all the more important where Probation recommends special conditions that are lengthy or technical. The draft monitoring condition in this case comprised 333 words and spanned thirty-nine lines of the sentencing transcript; the condition as expressed in the judgment is only slightly shorter, weighing in at 324 words. It is not realistic to expect defense counsel to comprehend and respond to such conditions orally and in real time, especially in the context of a lengthy sentencing proceeding such as Salazar's. We urge courts in the Eastern District to adjust their practices and disclose proposed special conditions in advance of sentencing as a matter of course.

We generally review special conditions of supervised release for abuse of discretion. *See United States v. Birkedahl*, 973 F.3d 49, 53 (2d Cir. 2020). Where a defendant fails to object contemporaneously, however, "we review only for plain error." *United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010) (per curiam). Nevertheless, where a defendant lacks notice of the challenged conditions, as here, we conduct "a less rigorous plain error review" to unobjected-to conditions. *Id.*; *accord United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir. 2002). At Salazar's sentencing hearing, his counsel raised only a narrow objection to the monitoring condition but objected comprehensively to the condition relating to sexually explicit content. Accordingly, we review Salazar's broader objections to the computer monitoring conditions, which were not previously raised, under the relaxed plain error standard, and we review the sexually explicit content condition for abuse of discretion.

"A district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). "There must be a reasonable relationship between the factors considered by the district court in the individualized assessment and the special condition of release being challenged," and the condition "must impose no greater restraint on liberty than is reasonably necessary to accomplish sentencing objectives." *United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020).

6

We have repeatedly cautioned against computer monitoring conditions that impose unnecessarily severe restrictions on releasees' liberty. Monitoring conditions "must be narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into [their] net." *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004). Moreover, the Supreme Court has observed that cell phones are "indispensable to participation in modern society," *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018), and we have held that special conditions of supervised release limiting internet access "must be carefully explained and robustly supported by a district court," *United States v. Eaglin*, 913 F.3d 88, 91 (2d Cir. 2019).

The monitoring condition in this case was neither narrowly tailored nor carefully explained. First, the condition is sweeping: It authorizes Probation to access Salazar's data "at any time with or without suspicion that Defendant violated the conditions of his release." App'x at 144. But beyond explaining that the condition's geolocation component would enable law enforcement to locate Salazar's device, the district court did not make individualized findings about the nexus between the breadth of the condition, on the one hand, and Salazar's characteristics and offense conduct, on the other. Specifically, there was no evidence that Salazar had viewed child pornography outside his home or concealed his use of such materials; indeed, upon being detected, he immediately confessed and cooperated with the authorities. *Cf. United States v. Browder*, 866 F.3d 504, 512 (2d Cir. 2017).

7

Second, it was uncertain at sentencing whether the condition constituted an absolute limitation on the number of internet-capable devices Salazar could possess. When the district court read the monitoring condition aloud, it stated that Salazar "*may be* limited" to a single device, but the judgment specified that Salazar "*is* limited to possessing only one personal internet-capable device." App'x at 113, 144 (emphasis added). A limitation to one device would severely restrict Salazar's ability to engage with society while on supervised release. It effectively requires Salazar to choose having a smartphone, a personal computer, a smart television, or some other internet-capable device -- but only *one* of them; he could not, for example, have both a smartphone and a laptop. Such a limitation would severely hamper his ability to engage in activities important to re-entry, such as applying for jobs, managing his finances, and consulting with counsel.

Third, narrower options were available to the district court. For instance, we have frequently described and have generally upheld monitoring conditions authorizing Probation to search releasees' devices only when an electronic program detects suspicious activity. *See, e.g.*, *Lifshitz*, 369 F.3d at 191-92; *United States v. Kunz*, 68 F.4th 748, 762-65 (2d Cir. 2023); *United States v. Wood*, 854 F. App'x 415, 417-18 (2d Cir. 2021) (summary order); *United States v. Vietor*, 806 F. App'x 60, 62-63 (2d Cir. 2020) (summary order). Here, there is no indication that the district court considered such a condition; nor, as we have explained, did the district court explain why a more

8

stringent condition was necessary. Accordingly, we vacate the condition and remand for the district court to consider whether to impose a monitoring condition and, if it elects to do so, to (1) narrowly tailor the condition to impose "no greater restraint on liberty than is reasonably necessary," *Haverkamp*, 958 F.3d at 151, and (2) explain the reasons for imposing the restraints.

As to the condition restricting Salazar's access to sexually explicit content, we have generally looked with disfavor on blanket bans on possessing or viewing such material. *See, e.g.*, *Eaglin*, 913 F.3d at 99 ("We tolerate such conditions only in limited circumstances."). Here, however, the condition is not an absolute prohibition; it bars Salazar from accessing sexually explicit content on a "computer, internet-capable device, or similar electronic device," but not via printed material, cable television, or tape recordings. App'x at 145. The district court made findings specific to Salazar, concluding that his viewing sexually explicit content would undermine his addiction treatment and that he "is acting with very little control over his conduct." *Id.* at 120. Moreover, the district court included in the judgment a provision that the condition "may be ameliorated if . . . a licensed mental health professional makes a finding" that Salazar's viewing sexually explicit content "will not increase the risk that [Salazar] will access child pornography or engage in sexual contact with children under 18." *Id.* at 145. Because the condition did not constitute a total ban, was justified with reference to the particulars of Salazar's case, and remains subject to amelioration, imposing it was

9

not an abuse of discretion.

*     *     *

For the reasons above, we **VACATE** the district court's judgment as to the monitoring condition and we **AFFIRM** the district court's judgment as to the condition regarding sexually explicit content. We **REMAND** the case for the district court to reconsider whether to impose a monitoring condition and, if it elects to do so, to proceed as set forth above.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10