*United States v. Wells*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of March, two thousand twenty-six.

PRESENT:

> PIERRE N. LEVAL,
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*
> _____

UNITED STATES OF AMERICA,

     *Appellee*,

     v.                     No. 24-76

LAURELL WELLS, AKA LAUREL BROWN,

     *Defendant-Appellant*,

GEORGIA WARD, AKA GEORGE WARD,

Defendant.

_____

For Defendant-Appellant: JEANANNE MURRAY, Murray Law LLC, New York, NY.

For Appellee: KATHERINE CHENG (Jeffrey Coyle and Michael D. Maimin, *on the brief*), Assistant United States Attorneys, *for* Edward Y. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 22, 2023 judgment of the district court is **AFFIRMED**.

Laurell Wells appeals a judgment of conviction following his guilty plea to one count of participating in a conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1349; one count of committing bank fraud, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1344 and 2; and one count of committing aggravated identity theft in violation of 18 U.S.C. §§ 1028(a)(1), 1028A(b), and 2. The district court imposed an aggregate sentence of 132 months'

imprisonment to be followed by a five-year term of supervised release. On appeal, Wells argues that the district court erred in denying his attorney's motion to withdraw as counsel; he also challenges the district court's order authorizing the disclosure of his Presentence Report ("PSR") to his health care provider. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I.     Defense Counsel's Motion to Withdraw.**

On the eve of trial, Wells's court-appointed lawyer moved to withdraw based on an asserted conflict of interest stemming from his firm's prior representation of Chase Bank ("Chase"), one of the victims of the bank fraud scheme. *See* Sealed App'x at 60. The district court denied the motion, finding that Wells had effectively waived any conflict. *Id.* at 82–84. On appeal, Wells contends that defense counsel's prior representation constituted an actual and unwaivable conflict of interest that was uncured by the waiver provided by Chase. We disagree.

The right to counsel under the Sixth Amendment entails "a correlative right to representation that is free from conflicts of interest." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).

3

"[T]he essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *United States v. Lussier*, 71 F.3d 456, 461 (2d Cir. 1995) (alteration adopted and internal quotation marks omitted). We review a district court's denial of defense counsel's motion to withdraw for abuse of discretion, and show "considerable deference to the district court's decision especially when the prosecution of the suit is likely to be disrupted by the withdrawal of counsel." *United States v. Oberoi*, 331 F.3d 44, 47 (2d Cir. 2003) (internal quotation marks omitted).

## A. The District Court Fulfilled Its Inquiry Obligation.

When "the specter of conflicts of interest arises," *Lussier*, 71 F.3d at 461 (internal quotation marks omitted), the district court must first "inquire into the existence of a conflict of interest" and "determine whether the attorney has an actual conflict, a potential conflict, or no conflict," *United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998). "In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations." *Id.* The district court met that threshold obligation here.

4

After Wells's trial counsel identified the conflict issue at a pretrial hearing on September 5, 2023, the district court directed counsel to make a further written submission so that the court could determine whether there was "a material conflict"; the court noted that if there was "even a hint there, we could have a *Curcio* hearing." Redacted App'x at 59 (referencing the requirements set forth in *United States v. Curcio*, 680 F.2d 881, 889 (2d Cir. 1982)). Ten days later, defense counsel filed a letter confirming that Chase was a firm client, but explaining that, in counsel's view, the conflict was a waivable potential conflict due to the "somewhat background nature of the bank[']s involvement" in Wells's scheme; counsel also believed that it was not in Wells's interest to challenge the evidence from Chase. Sealed App'x at 62. Counsel further noted that the firm had secured a conflict waiver from Chase, but that Wells had "refuse[d] to discuss the issue with" him. *See id.* at 62, 88. And on September 18, the district court held a pretrial hearing to discuss the conflict and the possibility of a waiver. *See Lussier*, 71 F.3d at 461. During this hearing, the district court informed Wells of the nature of the conflict, which stemmed from the fact that defense counsel's firm had "previously represented Chase Bank in some unrelated matters." Redacted App'x at 90. Given

this record, we conclude that the district court clearly met its threshold obligation to inquire about the conflict.

### B. Trial Counsel's Conflict Was a Waivable Potential Conflict.

Once a district court determines that a defendant's attorney "in fact[] labors under an actual or potential conflict," the court has an obligation to "ensure that the conflict is either eliminated or waived." *Lussier*, 71 F.3d at 461. If a conflict is "so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation," the court must disqualify the attorney. *Id*. But if the court determines that the conflict is "not severe" or that "there is only the possibility of a conflict, then the court must follow the procedures set out in *United States v. Curcio* to secure a knowing, voluntary, and intelligent waiver from the defendant of his right to a non-conflicted attorney." *Id.* (internal citation omitted).

The district court correctly concluded that defense counsel's representation of Chase created a waivable potential conflict of interest, not an actual, unwaivable one. *See Kliti*, 156 F.3d at 153 n.3. We have recognized only a "very narrow category of cases" in which attorney conflicts have been deemed to be "unwaivable." *United States v. Perez*, 325 F.3d 115, 126 (2d Cir. 2003). But no such conflict existed here. *See id.* at 127 (observing that "lesser conflicts, such as an

attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable"). Indeed, attorneys are rarely disqualified from representing a client simply because their firms previously represented witnesses or victims in a particular case. *See, e.g.*, *United States v. Leslie*, 103 F.3d 1093, 1098–99 (2d Cir. 1997) (concluding that defense counsel's prior representation of codefendant presented, at most, a potential conflict and not an unwaivable one, where the codefendant waived any conflict and did not ultimately testify).

Here, Chase – an institutional victim of the alleged bank fraud scheme – was a client of trial counsel's firm; in addition, one of the lawyers on Wells's defense team had worked on Chase matters while at the firm. *See* Sealed App'x at 62. Nevertheless, defense counsel represented that the firm had secured a conflicts waiver from Chase, freeing them to cross-examine Chase witnesses without limitation and to represent Wells with complete loyalty. An attorney's "prior representation of a trial witness" is "generally waivable," even where the conflict might require a defendant to abandon a particular defense or line of questioning. *Perez*, 325 F.3d at 127; *see also United States v. Basciano*, 384 F. App'x 28, 34 (2d Cir. 2010) (holding that defense counsel's prior representation of a cooperating witness

for the government did not constitute an unwaivable conflict). Accordingly, we conclude that the conflict raised by Wells was not an "unwaivable" conflict, but rather one that could be "knowingly and intelligently waived." *Perez*, 325 F.3d at 127–28.

### C. Wells Knowingly and Intelligently Waived the Conflict.

Nor did the district court abuse its discretion in finding that Wells "knowingly and intelligently waive[d] his right to conflict-free representation." *Kliti*, 156 F.3d at 153. Wells was informed of the potential conflict both in court and by letter prior to the hearing. During the September 18 hearing, the district court advised Wells of the dangers arising from the conflict, explaining that defense counsel "previously represented Chase Bank in some unrelated matters," and that "they might be less assiduous in [cross-examining Chase employees] because of the firm's representation of Chase in other matters." Wells Br. at 10, 13; Redacted App'x at 90. The district court then noted that "the question is whether you care," and stated that "even if you intend to plead guilty, you can't go forward with these lawyers unless you assure me that you have no problem going forward with these lawyers." Redacted App'x at 90. In response, Wells confirmed that he wished to "go ahead and have [defense counsel] represent [him] going forward,"

and declined the court's offer to appoint him independent counsel to further advise him on the conflict. *Id.* at 96. On September 19, Wells reaffirmed that he was "prepared to have [his] current counsel represent [him] at this trial" and gave "up any claims of conflict." *Id.* at 174.

On appeal, Wells nonetheless contends that his waiver was inadequate because the district court "downplayed the conflict" between Chase and Wells, Wells Br. at 53, failed to provide Wells with independent *Curcio* counsel, and improperly induced Wells to waive the conflict by advising him that "if [Wells] did not waive the conflict, he would have to proceed to trial *pro se*," *id.* at 55. But these arguments are belied by the record. At the *Curcio* hearing held on September 18, 2023, the district court discussed appointing Wells new, unconflicted counsel three separate times, and asked Wells if he wished to consult with an independent lawyer about the conflict question. Sealed App'x at 77, 81–82; Redacted App'x at 96, 150–51. Wells declined the offer and opted to proceed with his appointed defense counsel. Sealed App'x at 77, 81–82; Redacted App'x at 96, 150–51.

The following day, which was the first day of trial, Wells reversed course and asked the district court to relieve his counsel. But this request was not based on any asserted concern regarding the conflict. To the contrary, Wells

9

acknowledged through counsel that he understood the conflict waiver from the day before and understood that defense counsel would be able to "cross and attack" the Chase witness. *See* Redacted App'x at 135–36. Instead, Wells communicated through counsel that he desired to part ways with his counsel due to a disagreement about the best way "to cross-examine Chase to ask them questions." Redacted App'x at 135–36. Only then did the district court inform Wells that he had to choose – "continue with counsel" or "represent yourself *pro se*." *Id.* at 136. A disagreement over trial tactics is not a conflict of interest. *See United States v. Rosemond*, 958 F.3d 111, 119–20 (2d Cir. 2020) (explaining that the "adversary process could not function effectively if every tactical decision required client approval" (internal quotation marks omitted)). "And it is well settled that a defendant may not disrupt proceedings by demanding new counsel whenever he differs from his lawyer's strategic, legal, or ethical judgments about how to conduct a case." *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016).

To the extent there was any confusion as to the scope of Wells's waiver from the day before, the district court reviewed the transcript of the *Curcio* hearing, and although the district court thought Wells's waiver was sufficient to apply to his counsel's representation across the board, the district court proceeded to discuss

10

the conflict in detail again, including by asking the government about the testimony they would elicit from the Chase witness. Redacted App'x at 152–53, 165–73. After the government previewed the kinds of questions it would ask the Chase witness, Wells again agreed to waive the conflict. Redacted App'x at 173–74.

Because the district court properly held a *Curcio* hearing, and because the record reflects that Wells understood the risks associated with his counsel's potential conflict of interest, was given the "time to digest and contemplate the risks," and was offered the chance "to seek advice from independent counsel," *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019) (internal quotation marks omitted), we find no abuse of discretion in the district court's conclusion that Wells knowingly and intelligently exercised his right to waive the potential conflict, *see Curcio*, 680 F.2d at 885.

**II.    Challenge to Supervised Release Condition.**

As part of Wells's sentence, the district court imposed a condition of supervised release that requires Wells to participate in cognitive behavioral therapy; it also authorized the Probation Office to provide Wells's mental health treatment provider with copies of Wells's PSR and psychological and psychiatric

evaluations. Redacted App'x at 290. On appeal, Wells challenges only that portion of the judgment authorizing the release of his PSR and mental health records to the provider.

We review a district court's imposition of a special condition of supervised release for abuse of discretion. *United States v. Dupes*, 513 F.3d 338, 342–43 (2d Cir. 2008). District courts have "broad discretion" to impose conditions of supervised release. *United States v. Oliveras*, 96 F.4th 298, 313 (2d Cir. 2024). However, that discretion is not unfettered, and special conditions of supervised release must be "reasonably related to certain statutory factors governing sentencing, involve no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing, and [be] consistent with pertinent Sentencing Commission policy statements." *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019) (alteration adopted and internal quotation marks omitted).

Wells argues that the release of his PSR and mental health records was not sufficiently related to the factors set forth in 18 U.S.C. § 3553(a) and was greater than necessary to meet the objectives of sentencing. But disclosure of these records to treatment providers is routine, and it is well within the district court's authority to impose such a condition. *See, e.g.*, *United States v. Washington*, 904 F.3d 204 (2d

12

Cir. 2018) (remanding on other grounds without questioning the special condition that authorized the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to treatment provider); *see also, e.g.*, *United States v. Harris*, No. 24-1099-CR, 2025 WL 1040034, at *3 (2d Cir. Apr. 8, 2025) (holding that the district court did not err in authorizing the disclosure of the PSR and psychological/psychiatric reports to treatment providers).  Since Wells himself concedes that the requirement of mental health treatment was appropriate, it can hardly be argued that the disclosure of his PSR and mental health records to his therapist was unrelated to "the need . . . to provide the defendant with . . . medical care, or other corrective treatment in the most effective manner."  18 U.S.C. § 3553(a).  Nor can it be suggested that such limited disclosures to his treatment provider would result in a "greater deprivation of liberty than is reasonably necessary."  *Eaglin*, 913 F.3d at 94 (internal quotation marks omitted).  For all these reasons, the district court did not err in imposing the special condition at issue here.

\*    \*    \*

We have considered Wells's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court